**The STATE of Ohio, Appellee,**

v.

**BLANKENBURG, Appellant.**

[Cite as *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA2010–03–063.

Decided March 26, 2012.

202

Michael T. Gmoser, Butler County Prosecuting Attorney, Donald R. Caster, and Michael A. Oster, for appellee.

Repper, Powers & Pagan, Ltd., and Christopher J. Pagan; and Fred S. Miller, for appellant.

POWELL, Presiding Judge.

{¶ 1} A Butler County pediatrician convicted of various drug- and sex-related crimes in connection with allegations that he molested three minor patients and provided, for years, money or the means to obtain drugs to two of the same victims now appeals some of his convictions. Mark E. Blankenburg argues that the trial court erred when it refused to divide certain counts of his indictment into separate counts, incorrectly permitted the indictment to be amended at trial, and improperly admitted evidence of other acts that he had committed. We affirm the convictions, finding none of the arguments well taken.

{¶ 2} A multiple-count indictment was filed against Blankenburg in Butler County Common Pleas Court, and the matter went to trial in 2009. Some charges were tried to a jury, and others were tried to the bench.

{¶ 3} Blankenburg was found guilty of four counts of corruption of a minor, one count of aggravated trafficking in drugs, four counts of trafficking in drugs, one count of money laundering, six counts of gross sexual imposition, three counts of compelling prostitution or complicity thereto, and three counts of pandering sexually oriented matter involving a minor.

{¶ 4} After sentencing, Blankenburg instituted this appeal, raising seven assignments of error for our review.

{¶ 5} Assignment of Error No. 1:

{¶ 6} "Blankenburg's constitutional rights were violated by a duplicitous indictment and by duplicitous charging."

{¶ 7} Under this assignment of error, Blankenburg argues that "[m]ultiple acts of sexual misconduct were conflated into single counts" and that at trial, the state "introduced evidence of multiple acts of sexual misconduct to prove single counts. This constitutes duplicity, and violates Crim. R 8(A), the Sixth Amendment right to notice of the charge, the Fifth Amendment right to avoid double jeopardy, the

Article I, § 5 right to a unanimous jury in a criminal case, and the Article I, § 10 right to have a grand jury determine a criminal charge."

{¶ 8} According to Black's Law Dictionary, in criminal procedure, "duplicity" "takes the form of joining two or more offenses in the same count of an indictment; also termed double pleading." *Id.* (8th Ed.2004) 541. "Duplicitous," as applicable here, is defined as "alleging two or more matters in one plea." *Id.*; *see United States v. Murray*, 618 F.2d 892, 896 (2d Cir.1980) (an indictment is duplicitous if it joins two or more distinct crimes in a single count).

{¶ 9} Blankenburg asked the trial court to address his duplicity arguments on numerous counts of the indictment prior to trial. More than one hearing was devoted at least partially to a discussion of duplicity, specifically as it pertained to certain drug counts. The trial court denied Blankenburg's motion to dismiss the counts or to split individual counts into separate counts.

{¶ 10} Under this assignment of error, Blankenburg relies on the bill of particulars to identify the alleged victim of a specific count of the indictment that he is challenging. Blankenburg asserts that the following counts involved duplicitous charging or a duplicitous indictment or both: Counts 37 through 41 (gross sexual imposition against victim B.B.), Count 15 (gross sexual imposition against victim M.K.), Count 16 (corruption of a minor, victim M.K.), and Counts 17 and 18 (compelling prostitution, victim M.K.).

{¶ 11} For B.B., Count 37 alleges that Blankenburg committed the offense of gross sexual imposition as an ongoing and continuing course of conduct during a one-year period from April 18, 1993, through April 17, 1994, when B.B. was eight years old, and each successive count (Counts 38 through 41) involves a one-year period for the following year, which reportedly corresponds to the year in which this particular victim, B.B., would have been 9, 10, between 10 and 11, and 12 years old, respectively.

{¶ 12} Blankenburg argues that Counts 37 through 41 allege multiple acts for each count of gross sexual imposition and that it constituted duplicitous charging when B.B. said that Blankenburg fondled B.B.'s genitals 30 to 40 times at Blankenburg's medical office beginning at age eight or nine.

{¶ 13} As to M.K., Count 15 of the indictment and bill of particulars alleged that Blankenburg committed gross sexual imposition by fondling M.K.'s genitals as an ongoing course of conduct from May 1, 1990, through April 30, 1993; committed the offense of corruption of a minor as an ongoing course of conduct for performing fellatio on M.K. when the victim was 14 to 15 years old for Count 16; and committed the offense of compelling prostitution as an ongoing course of conduct when he paid money to M.K. to induce or procure sexual activity (fellatio)

with M.K. for hire from May 1, 1994, through June 30, 1996, for Count 17 and from July 1, 1996, through April 30, 1998, for Count 18.

{¶ 14} An indictment is sufficient if it (1) contains the elements of the charged offense, (2) gives the defendant adequate notice of the charges, and (3) protects the defendant against double jeopardy. *Hamling v. United States,* 418 U.S. 87, 117–118, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

{¶ 15} R.C. 2941.03(E) provides that an indictment is sufficient if it can be understood from the indictment "that the offense was committed at some time prior to the time of finding of the indictment." Each count of the indictment must contain, in substance, "a statement that the accused has committed some public offense therein specified." R.C. 2941.05.

{¶ 16} R.C. 2941.04 states that an indictment "may charge two or more different offenses connected together in their commission, or different statements of the same offense, or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more indictments or informations are filed in such cases the court may order them to be consolidated."

{¶ 17} An indictment is valid even if it states the time imperfectly or omits the time if the time is not an essential element of the offense. R.C. 2941.08(B) and (C). Other defects in the indictment do not render it invalid if they "do not tend to prejudice the substantial rights of the defendant upon the merits." R.C. 2941.08(K).

{¶ 18} Crim.R. 8(A) provides: "Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."

{¶ 19} R.C. 2941.28 states:

No indictment or information shall be quashed, set aside, or dismissed for any of the following defects:

(A) That there is a misjoinder of the parties accused;

(B) That there is a misjoinder of the offenses charged in the indictment or information, or duplicity therein;

(C) That any uncertainty exists therein.

If the court is of the opinion that either defect referred to in division (A) or (B) of this section exists in any indictment or information, it may sever such indictment or information into separate indictments or informations or into separate counts.

If the court is of the opinion that the defect referred to in division (C) of this section exists in the indictment or information, it may order the indictment or information amended to cure such defect, provided no change is made in the name or identity of the crime charged.

{¶ 20} We have thoroughly reviewed the record with reference to Blankenburg's specific arguments and found none of them well taken. First, this case involves a continuing course of conduct charged as separate offenses differentiated by certain time frames. As noted below, Ohio courts have permitted course-of-conduct prosecutions in cases involving multiple acts of sexual abuse perpetrated against child victims. The counts at issue here involve allegations of conduct toward victims who were children or teenagers when the alleged acts occurred several years ago.

{¶ 21} When crimes alleged in the indictment constitute sexual offenses against children, they need not state with specificity the dates of the alleged abuse, so long as the state establishes that the offense was committed within the time frame alleged. *State v. Wagers*, 12th Dist. No. CA2009–06–018, 2010-Ohio-2311, 2010 WL 2026779, ¶ 17–18.

{¶ 22} We do not share the concerns expressed about jury unanimity. If an indictment alleges that a child victim was molested intermittently within a specified time period even though the exact date of each molestation is unknown, the jury must either believe or disbelieve the victim's testimony that the pattern of conduct occurred. *State v. Ambrosia*, 67 Ohio App.3d 552, 587 N.E.2d 892 (6th Dist.1990).

{¶ 23} While some of the separate acts might have been separately charged, the possibility of but one conviction rather than many was to the accused's advantage. *See State v. Nebe*, 26 Ohio Law Abs. 581, 1937 WL 2412 (8th Dist.1937).

{¶ 24} In *State v. Chaney*, 3d Dist. No. 13–07–30, 2008-Ohio-3507, 2008 WL 2718509, the Third Appellate District upheld a conviction for two rape counts and one count of gross sexual imposition, where it was alleged that the accused engaged in a course of conduct beginning in September 1995 through September 2002 and the victim testified that she was touched inappropriately when she was a minor every day except weekends when her mother wasn't home, and after they moved, the accused engaged in cunnilingus several times.

{¶ 25} This court affirmed a conviction in which the accused was charged with four counts of felonious assault and those four counts were based upon numerous acts and omissions perpetrated against her children over the course of years. *State v. Cooper*, 139 Ohio App.3d 149, 743 N.E.2d 427 (12th Dist.2000).

{¶ 26} The Fifth Appellate District in *State v. Michael*, 5th Dist. No. 10AP090034, 2011-Ohio-2691, 2011 WL 2174984, affirmed a conviction in which two counts of rape were charged as a continuing course of conduct and encompassed a particular time period, spanning from when the victim was ten years old until the abuse was disclosed and the accused was arrested.

{¶ 27} The Eighth Appellate District upheld a conviction where the accused was charged with three counts of rape and three counts of gross sexual imposition for abusing two girls separately and repeatedly over a four-year period; one victim testified that she was raped approximately two out of every five school days and at every place the family resided. *State v. Bruce*, 8th Dist. No. 92016, 2009-Ohio-6214, 2009 WL 4170493.

{¶ 28} We agree with the reasoning of the Third Appellate District in *State v. Heft*, 3d Dist. No. 8–09–08, 2009-Ohio-5908, 2009 WL 3720562, which found no double-jeopardy issues when the defendant's indictment—as is the case here— differentiated the counts by the type of offense alleged and the time period, and therefore the accused was protected against a subsequent prosecution for the same conduct.

{¶ 29} In the case at bar, Blankenburg was charged with one offense per count of gross sexual imposition of B.B. as an ongoing course of conduct during a specific and separate time frame for the five counts. He was charged with one offense of gross sexual imposition as an ongoing course of conduct during a specific time frame for fondling M.K.'s genitalia, one offense of corruption of a minor for performing fellatio on M.K. as an ongoing course of conduct during a specific time frame, and one offense each of compelling prostitution as an ongoing course of conduct for a specific and separate time frame for two separate counts of procuring sexual activity with M.K. for hire.

{¶ 30} This case involved the difficulties presented when adults must recall acts of sexual abuse that occurred when they were minors. In many cases involving child sexual abuse, child victims are simply unable to remember exact dates and times, particularly where the crimes involved a repeated course of conduct over an extended period of time. *State v. Barnes*, 12th Dist. No. CA2010–06–009, 2011-Ohio-5226, 2011 WL 4790887. However, the victims in the case at bar offered testimony of conduct as indicated by the grand jury indictment and within the time frames as reflected by the indictment.

{¶ 31} We are persuaded by the cases cited above that the manner in which these specific counts were charged, and the evidence that was offered, did not constitute error. Therefore, we decline to follow as too dissimilar *State v. Jackson*, 8th Dist. No. 95920, 2011-Ohio-5920, 2011 WL 5588708.

{¶ 32} In *Jackson*, the defendant's convictions for child endangering and domestic violence were vacated when four distinct acts of physical abuse—punching a child, beating the child with a belt, burning him with a fork, and pushing the child out of the car—formed the basis of an indictment for felonious assault, domestic violence, and two counts of child endangering. The *Jackson* court found that the indictment did not apprise the defendant of what occurrences formed the basis of the charges, and the jury reportedly had no idea which charge referred to which act. Conversely, Blankenburg's indictment and the evidence admitted on the challenged counts presented no such impediment, as each particular count involved instances of identical conduct.

{¶ 33} After reviewing the indictment and the record at trial, we are not convinced that the manner in which Blankenburg was indicted or the evidence that was presented at trial prejudiced Blankenburg and, further, do not find that the indictment or evidence failed to give him notice of the nature of the charges against him, resulted in an inadequate trial record to protect against subsequent prosecution for the same offense, violated Crim.R. 8, presented the risk that the jury may have convicted him by a nonunanimous verdict, or violated a right to have the grand jury determine the charge.

{¶ 34} Blankenburg's first assignment of error is overruled.

{¶ 35} Assignment of Error No. 2:

{¶ 36} "The court erred in permitting Blankenburg to be tried for an offense that were [sic] never presented to, or indicted by, the grand jury."

{¶ 37} Blankenburg argues that the grand jury indicted him on three counts of corruption of a minor based on D.J.'s testimony to the grand jury but that at trial, D.J. "specifically disavowed any sex act occurring on 27 August 1998," which was the basis for Count 1. Blankenburg argues that the trial court erred in permitting Count 1 to be amended after D.J. testified that the August 27 incident didn't happen.

{¶ 38} According to the indictment and bill of particulars, Blankenburg was charged with three counts of corruption of a minor for performing fellatio on D.J. at Blankenburg's medical office when the youth was 13, 14, and 15 years of age, respectively. Count 1 specifically lists the time frame as "[o]n or about August 27, 1998."

{¶ 39} During trial, the state successfully moved to amend the indictment on Count 1 to allege that the act took place between June 12, 1998, and June 11, 1999, to reflect the year in which D.J. was 13 years of age.

{¶ 40} D.J. testified at trial that the first act of fellatio occurred at Blankenburg's medical office when D.J. was 13 years of age. D.J. testified that he did

not believe this act occurred on August 27, 1998. He also testified to a total of four such acts when he was a minor. An excerpt of grand jury testimony provided by Blankenburg indicates that D.J. told the grand jury that he was 13 years old when Blankenburg performed fellatio on him for the first time. He also told the grand jury that this conduct occurred three times while he was a minor.

{¶ 41} Section 10 of Article I of the Ohio Constitution provides, "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury * * *." This provision guarantees the accused that the essential facts constituting the offense for which he is tried will be found in the indictment of the grand jury. *State v. Headley*, 6 Ohio St.3d 475, 478–479, 453 N.E.2d 716 (1983) (where one of the vital elements identifying the crime is omitted from the indictment, it is defective and cannot be cured by the court, because that procedure would permit the court to convict the accused on a charge essentially different from that found by grand jury).

{¶ 42} The essence of this constitutional guarantee is also manifested in Crim.R. 7(D). *Headley*. That rule delineates the court's power to amend the indictment and provides: "The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged."

{¶ 43} A precise time and date of an alleged offense are ordinarily not essential elements. *State v. Sellards*, 17 Ohio St.3d 169, 171, 478 N.E.2d 781 (1985) (absent material detriment to the preparation of a defense, the omission of specific dates and times is without prejudice, and without constitutional consequence). It is axiomatic that in cases involving sexual misconduct with a young child, precise times and dates of the conduct or offenses often will not be determined. *State v. Boyer*, 10th Dist. No. 06AP–05, 2006-Ohio-6992, 2006 WL 3825264, ¶ 11, citing *State v. Barnecut*, 44 Ohio App.3d 149, 151–152, 542 N.E.2d 353 (5th Dist.1988).

{¶ 44} If the evidence ultimately establishes a variance between the dates alleged in the indictment and the evidence adduced at trial, the prosecution or court may amend the indictment pursuant to Crim.R. 7(D) to conform to the evidence offered·in the state's case-in-chief. *Boyer* at ¶ 12.

{¶ 45} Whether or not an amendment changes the name or identity of the offense with which one is charged is a matter of law, and therefore we must review this issue de novo. *State v. Craft*, 181 Ohio App.3d 150, 2009-Ohio-675, 908 N.E.2d 476, ¶ 22 (12th Dist.). In order to determine whether the identity is

changed, we must determine whether the amended indictment changes the penalty or degree of the offense. *State v. Davis,* 121 Ohio St.3d 239, 2008-Ohio-4537, 903 N.E.2d 609, syllabus; *Craft* at ¶ 24.

{¶ 46} We are aware of the cases cited by Blankenburg in support of his argument that the amendment to Count 1 changed the identity of the offense and created the risk that he was convicted on evidence that was not presented to the grand jury. *See, e.g., State v. Plaster,* 164 Ohio App.3d 750, 2005-Ohio-6770, 843 N.E.2d 1261 (5th Dist.); *see, e.g., Barnecut,* 44 Ohio App.3d 149, 542 N.E.2d 353. However, we are not persuaded by this argument.

{¶ 47} It appears from the record available for this appeal that D.J. told the grand jury that he was 13 years old when the first act of fellatio occurred. D.J. was 13 years of age from June 12, 1998, through June 11, 1999, which included Aug. 27, 1998. The amendment kept the same time frame—when D.J. was 13 years of age—by which Blankenburg was informed that he was accused of committing this particular offense against D.J. when the victim was 13. The amendment to the indictment did not change the identity of the offense, nor did it result in a conviction based on evidence that was not presented to the grand jury.

{¶ 48} Having established that the amendment did not change the name or identity of the crime charged, we review the decision of the trial court to allow the amendment under the abuse-of-discretion standard. *Craft,* 181 Ohio App.3d 150, 2009-Ohio-675, 908 N.E.2d 476, at ¶ 27 (in order to constitute reversible error, appellant must show not only that the trial court abused its discretion, but also that the amendment hampered or otherwise prejudiced appellant's defense).

{¶ 49} Upon review, we find no abuse of discretion and no prejudice to Blankenburg. His second assignment of error is overruled.

{¶ 50} Assignment of Error No. 3:

{¶ 51} "The state possessed information regarding a specific offense date that it failed to supply to the defense."

{¶ 52} Blankenburg argues that Counts 16 and 17 of the indictment and bill of particulars provided offense dates over a 24–month period, but the state was aware of the specific date of the offenses when it directed the complaining witness (M.K.) to a specific medical office visit, thereby violating the requirement to disclose a specific date when it possessed that information.

{¶ 53} Blankenburg did not raise this objection at trial. Generally, an appellate court will not consider an alleged error that the complaining party did not bring to the trial court's attention at the time the alleged error occurred, but a reviewing court may consider an error that was not objected to when that error is plain error. *See State v. Kilgore,* 12th Dist. No. CA2005–06–172, 2006-Ohio-

2139, 2006 WL 1132854, ¶ 26.  An alleged error is plain error only if the error is obvious and but for the error, the outcome of the trial clearly would have been otherwise.  *State v. Lang,* 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 108.  Notice of plain error is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice.  *Id.*

{¶ 54} The offense charged under Count 16 was corruption of a minor.  The state alleged that Blankenburg had sexual conduct with a person who was 13 years of age or older but less than 16 years of age.  Compelling prostitution was the offense charged under Count 17, which alleged that the offender induced, procured, solicited, or requested a minor to engage in sexual activity for hire, whether or not the offender knew the age of the minor.

{¶ 55} Blankenburg cites *Sellards* for the proposition that the state must, in response to a request for a bill of particulars or demand for discovery, supply specific dates and times with regard to an alleged offense if it possesses that information.

{¶ 56} First, *Sellards* also stated that ordinarily, precise times and dates are not essential elements of offenses, and specifications as to date and time ordinarily would not be required in a bill of particulars, since that information does not describe particular conduct but instead describes only when that conduct is alleged to have occurred.  *Sellards,* 17 Ohio St.3d at 171, 478 N.E.2d 781.

{¶ 57} The state's failure to provide specific dates and times in an indictment is more likely to prejudice an accused in cases in which the age of the victim is an element of the crime charged and the victim bordered on the age required to make the conduct criminal.  *Barnes,* 2011-Ohio-5226, 2011 WL 4790887 at ¶ 15, citing *Sellards* at 172.  A second common situation resulting in prejudice is where the defendant was indisputably elsewhere during part but not all of the intervals of time set out in the indictment.  *Sellards.*

{¶ 58} Conversely, where the inability to produce a specific time or date when the criminal conduct occurred is without material detriment to the preparation of a defense, "the omission is without prejudice and without constitutional consequence."  *Id.*

{¶ 59} First, since the alleged error was not raised below, the record was not developed regarding when the state learned of a more specific date or was able to narrow the time frame for the offenses.  M.K. testified that he was able to identify the date once he reviewed his old medical records and remembered the context within which the events occurred.

{¶ 60} We cannot say that the state withheld the information on the specific dates. Further, it does not appear that specific dates served as a material detriment to Blankenburg, as he appeared to maintain that no sexual activity ever occurred during the time frame when any victim was a minor.

{¶ 61} Upon review, we cannot say that an obvious error occurred and but for the error, the outcome of the trial clearly would have been otherwise. See *Sellards*, 17 Ohio St.3d at 172, 478 N.E.2d 781. Accordingly, Blankenburg's third assignment of error is overruled.

{¶ 62} Assignment of Error No. 4:

{¶ 63} "The trial court erred to the prejudice of defendant-appellant when it admitted numerous 'other acts' testimony and documents into evidence."

{¶ 64} Blankenburg presents a number of arguments in his challenge to the "other-acts evidence" admitted in this case. Before we address those arguments, we will briefly outline the law pertaining to "other acts."

{¶ 65} R.C. 2945.59 states:

In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with, or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

{¶ 66} Evid.R. 404(B) provides: "Evidence of other * * * acts is not admissible to prove the character of a person to show that the person acted in conformity with his character on a particular occasion. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *See also State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 18 (generally, extrinsic acts may not be used to suggest that the accused has the propensity to act in a certain manner).

{¶ 67} The underlying policies of Evid.R. 404(B) and R.C. 2945.59 are essentially the same and are exceptions to the common-law rule that evidence of other acts is inadmissible to prove any element in the crime for which a defendant stands trial. *State v. Broom*, 40 Ohio St.3d 277, 281–282, 533 N.E.2d 682 (1988). Therefore, both the rule and the statute must be strictly construed against admissibility. *Id.*

{¶ 68} Neither R.C. 2945.59 nor Evid.R. 404(B) requires that the other act be similar to the crime charged, as long as the prior act tends to show one of the enumerated factors. *Crotts* at ¶ 19. To be admissible, the other-act evidence must tend to show by substantial proof one or more of the things that the rule or statute enumerates. *Broom.*

{¶ 69} In addition to R.C. 2945.59 and Evid.R. 404(B), Evid.R. 403(A) requires the exclusion of relevant evidence if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury.

{¶ 70} When the charges involve gross sexual imposition under R.C. 2907.05, the applicable versions of that statute carry their own version of the "rape shield" law, which provides that evidence of specific instances or opinion or reputation evidence of the defendant's sexual activity shall not be admitted unless it involves evidence of the defendant's past sexual activity with the victim or is admissible against the defendant under R.C. 2945.59 and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

{¶ 71} Blankenburg first argues that *State v. Lowe*, 69 Ohio St.3d 527, 634 N.E.2d 616 (1994), held that there must be substantial proof that he committed the other acts in question before they can be admitted. Blankenburg asserts that there was not substantial evidence that he possessed the photographs admitted as other-acts evidence, and for that reason, the trial court erred in permitting Dr. Sharon Cooper to refer to them when testifying about the nature of child erotica.

{¶ 72} Testimony was presented that Blankenburg and his brother, Scott, took photographs during male youth sporting events for Hamilton-area teams for several years. Former athletes testified they observed Blankenburg and his brother with camera equipment, taking photos. Some also testified that that at the end of the season, athletes were often given a packet of action photographs depicting their play on the field or court.

{¶ 73} The state presented evidence that law-enforcement officers removed camera equipment and tens of thousands of photographs from the home shared by Blankenburg, his brother, and their father. Some of the photographic evidence was found in a bedroom in which clothing and other personal effects from Blankenburg and his brother were located, and other photographic evidence was found in the basement of the dwelling. Evidence was presented that Blankenburg used the computer found in the area where some of the photos were found.

{¶ 74} The state presented evidence that some of the photographs or negatives removed from the house contained images appearing to feature the clothed

buttocks or clothed groin region of teenage boys, or of shirtless teenage boys, most of whom were athletes. Some of the former male athletes identified themselves in these photographs, which included images showing the former athletes warming up on the sidelines, removing portions of their uniforms, sitting in the stands as spectators, or, in one example, standing outside his vehicle at a gas station.

{¶ 75} A law-enforcement witness testified that Blankenburg's name was found on a few photo processing labels and his brother's name on some but that many of the processing labels contained what law enforcement believed to be fictitious female names.

{¶ 76} The evidence also contained notebooks of photo negatives. Small sheets of paper were attached to many of the negative sheets or contact prints, and those papers contained notations as to specific images. One such prescription sheet also contained the notation "For me" and listed two images that depicted a shirtless athlete. The notations were scribbled on the back of sheets from Blankenburg's prescription pad.

{¶ 77} The trial court indicated that there was sufficient evidence to find that at the very least, Blankenburg jointly possessed the photographic materials with his brother. Having reviewed the record in accordance with the applicable law, we find substantial proof that Blankenburg possessed the evidence, and consequently, the trial court did not err in permitting Dr. Cooper to rely on the photo evidence in her testimony as an expert witness.

{¶ 78} Blankenburg next argues that when an accused commits a sex crime for the obvious motive or intention of sexual gratification, other-acts evidence tending to prove that intent or motivation is not material and is therefore inadmissible under Evid.R. 404(B) and R.C. 2945.59. He further argues that the admission of other-acts evidence was "certainly prejudicial" to him.

{¶ 79} In support of his claims, Blankenburg argues that possession of various photographs did not constitute a criminal act and that the photos had "nothing whatsoever to do with the specific acts that Blankenburg was accused of" in relation to the charges of gross sexual imposition and corruption of a minor and were simply used improperly to show that Blankenburg was the type of person who could commit such sex crimes.

{¶ 80} In conjunction with his opposition to the admission of the photographs, Blankenburg objects to the admission of a wrestling video that was apparently filmed by him. In this video, two high school male wrestlers are recorded practicing, watching, and participating in matches, with some camera focus solely on their bodies.

{¶ 81} Blankenburg argues that it was error to admit the video, the testimony of Dr. Cooper, and the testimony of former athletes who identified themselves in some of the photographs in the collection. He also challenges the introduction of testimony from victims M.K. and D.J. that he engaged in sexual activity with them beyond the number of acts they initially claimed. The trial court throughout the trial provided the jury with instructions limiting their consideration of other-acts evidence.

{¶ 82} The state argues that the other-acts evidence was properly admitted to show Blankenburg's motive for committing the crimes. "Motive" has been defined as a mental state that induces an act, the moving power that impels action for a definite result. *State v. Williams*, 2d Dist. 24149, 2011-Ohio-4726, 2011 WL 4346650; *State v. Young*, 7 Ohio App.2d 194, 196, 220 N.E.2d 146 (10th Dist.1966). Motive is generally relevant in criminal trials even though the matter involved is not an element of the offense that the state must prove to secure a conviction. *Williams*. Unless readily evident from the accused's conduct, motive is a part of the narrative of the state's theory of its case against the accused seeking to prove his criminal liability. *Id.*

{¶ 83} In order for other acts to be admissible to show motive, the other acts must be " 'of a character so related to the offense for which the defendant is on trial that they have a logical connection therewith and may reasonably disclose a motive or purpose for the commission of such offense.' " *State v. Craycraft*, 12th Dist. Nos. CA2009-02-013 and CA2009-02-014, 2010-Ohio-596, 2010 WL 610601, ¶ 27, reversed on other grounds, 128 Ohio St.3d 337, 2010-Ohio-6332, 944 N.E.2d 220, quoting *State v. Moore*, 149 Ohio St. 226, 78 N.E.2d 365 (1948), paragraph one of the syllabus (construing a predecessor of R.C. 2945.59).

{¶ 84} Blankenburg cites a number of cases in support of his argument that his motive was readily evident from his conduct and could not justify the use of other-acts evidence for that purpose. It does not appear from the record that Blankenburg denied that he may have engaged in a sexual relationship with at least one of these victims when the alleged victim was an adult, but he maintains that he did not abuse his minor patients.

{¶ 85} The state introduced the photographs described as child erotica, the former athletes who testified about their photographs, and the other instances of sexual activity with M.K. and D.J. to show Blankenburg's motive for engaging in sexual activity with minor male patients. After reviewing the record, we cannot agree that Blankenburg's motive to engage in sexual activity with minors was readily evident. Blankenburg was a physician apparently well respected in the community, a booster of local athletics for years, and at some point a youth baseball coach. The other-acts evidence provided the motive or explained why a

respected local physician acted in the manner in which he did with some of his minor patients.

{¶ 86} The other-acts testimony of M.K. and D.J. also provided evidence of Blankenburg's preparation, scheme, plan, or system in committing the offenses. *See* R.C. 2945.59; Evid.R. 404(B).

{¶ 87} There are two situations in which other-acts evidence is admissible to show a defendant's scheme, plan, or system: (1) to show the background of the alleged crime or (2) to show identity. *State v. Williams*, 195 Ohio App.3d 807, 2011-Ohio-5650, 961 N.E.2d 1200 (to show background, evidence must be inextricably related to the charged crime and admissible because it would be virtually impossible to prove that the accused committed the crime charged without also introducing evidence of the other acts).

{¶ 88} Evidence was presented establishing the background necessary to give a complete picture of the alleged crimes: Blankenburg engaged in sexual activity with M.K., D.J., and B.B. after a parent or guardian did not accompany them to the examination room. B.B. indicated that after one incident of fondling, Blankenburg gave him some money. M.K. and D.J. testified that Blankenburg would provide them with money or the means to obtain drugs after sexual conduct occurred. *See State v. Frost*, 6th Dist. Nos. L–06–1142 and L–06–1143, 2007-Ohio-3469, 2007 WL 1953624 (other-acts evidence shows that defendant committed similar crimes against the same victim within a period of time near to the crimes charged and that a similar system was used to commit both the crimes charged and the other acts); *see State v. Walker*, 8th Dist. No. 79767, 2002-Ohio-1653, 2002 WL 538761 (other acts were inextricably related to the defendant's alleged course of conduct and formed a background necessary to give a complete picture of the alleged crime; child victim's testimony about previous sexual advances played an integral part in explaining the sequence of events and was necessary to give the jury a complete picture of the crimes with which defendant was charged); *see also* R.C. 2907.05 (past sexual activity with the victim).

{¶ 89} The admission of other-acts evidence under Evid.R. 404(B), R.C. 2945.59, and the rape shield law, where applicable, lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice. *State v. Short*, 1st Dist. No. C–100552, 2011-Ohio-5245, 2011 WL 4863768, ¶ 5; *see also State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 96.

{¶ 90} Upon review of the record, the prejudicial effect of the admission of the other-acts evidence did not outweigh its probative value. We find no abuse of discretion in permitting the introduction of the other-acts evidence, and the

exercise of this discretion did not prejudice, let alone materially prejudice, Blankenburg.

{¶ 91} Blankenburg next argues the trial court violated his right to a fair trial by admitting cumulative and repetitive photographs into evidence. The state told the trial court that officers seized probably 40,000 photos from Blankenburg's home and the state selected a percentage of them, reportedly 4,000, to admit into evidence. Some of the photographs were shown to Dr. Cooper, who was asked during her testimony to provide an opinion about whether they were consistent with child erotica, and were subsequently "published" to the jury. The rest of the photos were admitted and available to the jury.

{¶ 92} The admission or exclusion of photographic evidence is left to the discretion of the trial court. Under Evid.R. 403, a trial court may reject an otherwise admissible photograph that, because of its inflammatory nature, creates a danger of prejudice that substantially outweighs the probative value of the photograph as evidence, but absent such danger, the photograph is admissible. *State v. Morales*, 32 Ohio St.3d 252, 257, 513 N.E.2d 267 (1987); *see also* R.C. 2907.05 (its inflammatory or prejudicial nature does not outweigh its probative value).

{¶ 93} The admission of roughly 4,000 photos would certainly appear, at first blush, to support Blankenburg's argument that the evidence was cumulative. However, the collection of photographs was, in itself, significant. This collection of photographs was the evidence, photographs possessed by Blankenburg, not photos taken by law enforcement. The photos did not depict overtly sexual images. In fact, many of them could be considered innocuous and arguably could have been accidently taken in the process of capturing thousands and thousands of images over several years.

{¶ 94} It is for this reason, however, that the large number of shots described as child erotica presented a more accurate evidentiary picture of Blankenburg's motive. In other words, these images were not the result of inadvertence, accident, or ineptness. Blankenburg argues that this "overabundance of photographs was overwhelming." Indeed, the number of photographs illustrates that Blankenburg collected not some evidence of his motive, but a remarkable number of images directly relevant to his motive.

{¶ 95} The dissent acknowledges that there is no bright-line test for the appropriate number of images introduced but argues that the admission of 100 or 200 or possibly even 400 photographs should be sufficient. There was a tremendous number of images, approximately 40,000, reportedly removed from Blankenburg's home, and the state presented a percentage—roughly 10 percent—of the collection. We do not fault the trial court for choosing to allow within its

discretion the introduction of 10 percent, rather than, say, 1 percent, of the totality of the images.

{¶ 96} While the sheer number of photographs admitted may constitute error when they are needlessly cumulative, "the mere fact that there are numerous photos will not be considered reversible error unless the defendant is prejudiced thereby," and "[a]bsent gruesomeness or shock value, it is difficult to imagine how the sheer number of photographs admitted can result in prejudice requiring reversal." *State v. DePew*, 38 Ohio St.3d 275, 281, 528 N.E.2d 542 (1988) (reviewing photographs of crime scene taken by law enforcement in capital murder trial).

{¶ 97} The number of images made available to the jury was a discretion call by the trial court, and we cannot say that the trial court abused its discretion in that regard.

{¶ 98} Blankenburg's final argument under this assignment of error asks this court to find that the improper admission of other-acts evidence violated his due process constitutional right to a fair trial. Since we did not find that the trial court improperly admitted the other-acts evidence, we do not find that Blankenburg's due process rights were violated by the admission of this evidence.

{¶ 99} After having thoroughly considered the arguments and law cited by Blankenburg, including supplemental authority, we are not persuaded to accept Blankenburg's arguments and overturn the trial court's rulings on these issues. Blankenburg's fourth assignment of error is overruled.

{¶ 100} Assignment of error No. 5:

{¶ 101} "The trial court erred to the prejudice of defendant-appellant when it permitted Dr. Cooper to testify as an expert."

{¶ 102} Blankenburg argues that it was improper to allow Dr. Cooper to testify to matters that are not beyond a jury's knowledge or experience when she based her testimony on photographs the "jury was quite capable of reviewing and interpreting."

{¶ 103} Evid.R. 702 provides that a witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information.

{¶ 104} Dr. Cooper, a pediatrician, testified that approximately 60 percent of her current practice involved "child-abuse maltreatment," including child exploitation.

{¶ 105} The trial court expressed concern about whether Dr. Cooper's testimony was required with regard to child erotica, but qualified her as a doctor of pediatrics. It ruled that Dr. Cooper possessed knowledge, experience, and specialized information helpful to the jury and judge but limited the scope of her testimony. The trial court eventually permitted Dr. Cooper to testify that child erotica was a visual, written, or physical object concerning children that serves as a sexual fantasy for a person who has a preferential interest in children and may include photos that do not depict any type of sexually explicit behavior but may involve children dressed in a manner significant to a person who has a preferential interest in children.

{¶ 106} Dr. Cooper described a collector as a person who finds images and has them in his or her possession; she indicated that a reproducer not only collects images, but produces hard copies. Dr. Cooper was also shown numerous photographs removed from the Blankenburg home and she opined that they were consistent with child erotica.

{¶ 107} The determination of the admissibility of expert testimony is within the discretion of the trial court, and its decision will not be disturbed absent an abuse of that discretion. *State v. Barnes*, 2011-Ohio-5226, 2011 WL 4790887, ¶ 44, citing *Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, 850 N.E.2d 683, ¶ 9.

{¶ 108} Dr. Cooper's testimony tied the seemingly innocuous, nonsexual photographs to Dr. Blankenburg's motive and the mental state that induced his conduct. Dr. Cooper used her knowledge and experience to provide evidence related to matters beyond the knowledge and experience possessed by the jury or helped dispel misconceptions common to lay persons. We do not find that the trial court abused its discretion in admitting the expert testimony of Dr. Cooper. Blankenburg's fifth assignment of error is overruled.

{¶ 109} Assignment of Error No. 6:

{¶ 110} "Blankenburg's conviction for count 37 was unlawful."

{¶ 111} Blankenburg challenges the sufficiency and manifest weight of the evidence for Count 37, which alleged that he committed the offense of gross sexual imposition on B.B. when the victim was eight years old. Blankenburg

argues that B.B. "never affirmatively stated that he was molested when he was 8 years old."

{¶ 112} When reviewing a challenge to the sufficiency of the evidence to support a criminal conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Hancock,* 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 34; *State v. Blanton,* 12th Dist. No. CA 2005–04–016, 2006-Ohio-1785, 2006 WL 902362, ¶ 6.

{¶ 113} A court considering whether a conviction is against the manifest weight of the evidence must review the entire record, weighing the evidence and all reasonable inferences, and consider the credibility of witnesses. *Hancock* at ¶ 39. The question is whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *Id.; Blanton* at ¶ 7.

{¶ 114} The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. *See State v. DeHass,* 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). A unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required to reverse a judgment on the weight of the evidence in a jury trial. *Thompkins* at 389.

{¶ 115} B.B. alleged that he was fondled by Blankenburg 30 to 40 times while he was Blankenburg's patient and that he was often sick as a child and had to have frequent allergy shots at Blankenburg's office. B.B. was asked how old he was when the fondling began, and he responded, "I would say around—right around nine."

{¶ 116} B.B. answered in the affirmative when asked by the prosecutor whether the fondling occurred "some time before you were ten, in the eight or nine or ten range, somewhere in there?" When asked to clarify, B.B. testified, "What I told them [the state] is in between the ages of eight, nine, ten, eleven years old. I don't remember the exact age; I was a kid. I said it happened 30 to 40 times, okay. That's what I'm saying." When asked again if it happened before B.B. was seven, he said he didn't believe so. When asked if it happened before he was nine years old, B.B. replied, "Nine, ten years old."

{¶ 117} As we've previously noted, in many cases involving child sexual abuse, child victims are simply unable to remember exact dates and times, particularly when the crimes involved a repeated course of conduct over an extended period of

time. *Barnes*, 2011-Ohio-5226, 2011 WL 4790887, at ¶ 12. However, B.B. testified that he told the state that the fondling occurred "between the ages of eight, nine, ten, eleven years old." Construing the evidence under the applicable standards for both the sufficiency and manifest weight of the evidence, we find that the conviction for Count 37 was not unlawful and overrule Blankenburg's sixth assignment of error.

{¶ 118} Assignment of error No. 7:

{¶ 119} "The clerk of courts and prosecutor erred in assessing court costs and obtaining a certified judgment."

{¶ 120} Blankenburg argues that a costs statute and his due process rights were violated when the clerk of courts did not compile the cost information or certify it, and did not present it to the prosecutor for review, and some of the costs included those for a prior dismissed case against him and a detective's overtime pay.

{¶ 121} The applicable version of R.C. 2949.14 states that upon conviction of a nonindigent person for a felony,

> the clerk of the court of common pleas shall make and certify under his hand and seal of the court, a complete itemized bill of the costs made in such prosecution, including the sum paid by the board of county commissioners, certified by the county auditor, for the arrest and return of the person on the requisition of the governor * * *. Such bill of costs shall be presented by such clerk to the prosecuting attorney, who shall examine each item therein charged and certify to it if correct and legal. Upon certification by the prosecuting attorney, the clerk shall attempt to collect the costs from the person convicted.

{¶ 122} In all criminal cases, costs must be included in the sentencing entry. *State v. Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164, ¶ 19, citing R.C. 2947.23(A). The clerk of courts is responsible for generating an itemized bill of the court costs. *Id.* However, even if the itemized bill is ready at the time of sentencing, the specific amount due is generally not put into a judgment entry. *Id.* at ¶ 19, 21 (calculating a bill for the costs in a criminal case is merely a ministerial task; failing to specify the amount of costs assessed in a sentencing entry does not defeat the finality of the sentencing entry as to costs).

{¶ 123} The phrase "costs of prosecution" has not been statutorily defined. *Middleburg Hts. v. Quinones*, 120 Ohio St.3d 534, 2008-Ohio-6811, 900 N.E.2d 1005, ¶ 8. Ohio courts have consistently held that the power to impose court costs must be statutorily granted. *Id.* at ¶ 8, 9.

{¶ 124} The Ohio Supreme Court described costs in *Quinones*, as "the statutory fees to which officers, witnesses, jurors, and others are entitled for their

services in an action or prosecution, and which the statutes authorize to be taxed and included in the judgment or sentence." *Id.* at ¶ 8.

{¶ 125} "The expenses which may be taxed as costs in a criminal case are those directly related to the court proceedings and are identified by a specific statutory authorization." *State v. Christy,* 3d Dist. No. 16–04–04, 2004-Ohio-6963, 2004 WL 2940888, ¶ 22.

> For example, as expressly provided for by the Ohio Revised Code, a sentencing court may order a criminal defendant to pay the following costs and expenses associated with criminal proceedings: fees of officers and court personnel [R.C. 2303.28], including clerks of court [R.C. 2303.20]; jury fees [R.C. 2947.23]; witness fees [R.C. 2335.05]; interpreters fees [R.C. 2335.09]; and fees of psychologists and psychiatrists [R.C. 2947.06]; etc.

*Id.* (no statutory provision has been identified by the state as authorizing the towing and storage of the defendant's vehicle to be assessed as costs in this proceeding, so consequently, trial court is without authority to assess those expenses under the category of "costs of prosecution," however desirable it might be to do so); *see also* R.C. 2929.28 (defendant convicted of arson to pay costs of investigation and prosecution); *see also* R.C. 2923.32 (assessment of costs of investigation and prosecution for engaging in a pattern of corrupt activity).

{¶ 126} The trial court ordered Blankenburg to pay costs of prosecution, and the sentencing entry did not contain an amount of the calculated costs. The state argues that the clerk's office filed a praecipe for certification of the court costs, but nothing has been reduced to judgment. We have nothing in the record before us to indicate whether the proper procedure is being followed or whether the prosecution costs have been reduced to judgment. Therefore, we have nothing to pass upon as the record stands before this court. Accordingly, the issue does not appear to be ripe for our consideration. Blankenburg's seventh assignment of error is overruled.

{¶ 127} The judgment is affirmed.

Judgment affirmed.

HUTZEL, J., concurs.

RINGLAND, J., concurs in part and dissents in part.

RINGLAND, Judge, concurring in part and dissenting in part.

{¶ 128} I concur in the majority's analysis and resolution of Blankenburg's second, third, fifth, sixth, and seventh assignments of error. I also concur, albeit in judgment only, in the majority's decision regarding Blankenburg's first assignment of error. However, because I find that the trial court abused its discretion

by admitting approximately 4,000 of the so-called child erotica photographs into evidence, I dissent in part from the majority's decision regarding Blankenburg's fourth assignment of error.

### Blankenburg's First Assignment of Error: The Problems of Duplicity

{¶ 129} As noted above, I concur, albeit in judgment only, with the majority's decision regarding Blankenburg's first assignment of error. I write separately to emphasize the potential problems of duplicity when prosecuting child sex offenses and urge our Supreme Court to provide the courts of this state with the necessary guidance.

{¶ 130} "The prohibition against duplicity is geared to protect the accused's Sixth Amendment right to notice of the nature of the charge against him and prevent confusion as to the basis of the verdict." *State v. Smith*, 9th Dist. No. 8869, 1978 WL 215411, *1 (Oct. 4, 1978), citing *United States v. Tanner*, 471 F.2d 128, 139 (7th Cir.1972). Although most courts discussing the matter combine the two, *see, e.g., State v. Ward*, 9th App. No. 09CA009720, 2011-Ohio-518, 2011 WL 378799; *State v. Ficklin*, 8th Dist. No. 92228, 2009-Ohio-6103, 2009 WL 3862399, arguably, there are actually two forms of duplicity: (1) duplicity in the indictment and (2) duplicity in the charge.[1]

{¶ 131} Duplicity in the indictment, the more common form of duplicity, occurs when two or more distinct offenses are joined in a single count. *See State v. Abuhilwa*, 9th Dist. No. 16787, 1995 WL 134746, *5 (Mar. 29, 1995). Crim.R. 8(A) prohibits duplicity in indictments by requiring each offense to be separately charged. However, despite this prohibition otherwise, when two or more offenses are part of a course of criminal conduct, the offenses may be charged "in separate counts for each offense." Such issues regarding a duplicitous indictment, although usually not labeled as such, are easily remedied through a motion to sever in a request for separate trials upon a showing of prejudice. *See State v. Moshos*, 12th Dist. No. CA2009–06–008, 2010-Ohio-735, 2010 WL 703242, ¶ 75–89; *see also State v. Hill*, 5th Dist. No. 2002–CA–00046, 2007-Ohio-56, 2007 WL 60668, ¶ 10–24.

{¶ 132} On the other hand, Blankenburg argues duplicity in the charge. Duplicity in the charge, a more theoretical and less discussed form of duplicity, exists when an indictment refers to but one criminal act when multiple acts are then introduced at trial to prove the charged offense. While many states use this term and discuss this concept, case law in Ohio provides courts with minimal

---

1. Blankenburg raises the concept of two distinct types of duplicity. While I have found no recognition of the distinction in Ohio, I believe the distinction is valid. However, as I will discuss below, based upon the current state of the law in Ohio, this distinction may prove to be academic only.

guidance regarding this theory of duplicity. *See Cooksey v. State*, 359 Md. 1, 752 A.2d 606 (2000); *State v. Saluter*, 715 A.2d 1250 (R.I.1998); *State v. Patch*, 135 N.H. 127, 599 A.2d 1243 (1991); *People v. Van Hoek*, 200 Cal.App.3d 811, 246 Cal.Rptr. 352 (Cal.App.1988); *People v. Keindl*, 68 N.Y.2d 410, 509 N.Y.S.2d 790, 502 N.E.2d 577 (1986).

{¶ 133} Issues regarding duplicity first appeared in Ohio in the case of *Barnhouse v. State*, 31 Ohio St. 39 (1876). In that case, Barnhouse was indicted and tried on a single count of incest. However, although he was charged with only one count, the evidence adduced at trial indicated that his incestuous conduct occurred continuously between 1865 and 1876. *Id.* at 39. The Ohio Supreme Court, upon noting that incest is a single-act crime,[2] reversed Barnhouse's conviction on the theory of duplicity by finding: "An indictment for incest which charges the criminal act [had] been committed continuously through a specified period of years, is to be regarded as charging several distinct offenses, and is bad for duplicity." *Id.*

{¶ 134} In response to *Barnhouse* and its progeny, the General Assembly enacted a duplicitous-indictment statute now codified at R.C. 2941.28(B).[3] In essence, this statute precludes the trial court from dismissing a duplicitous indictment instead of merely severing the indictment into separate counts. Unfortunately, Crim.R. 8(A) does not address any remedy for duplicity in the indictment, nor does it address the related issue of duplicity in the charge.

{¶ 135} As noted by the majority, Counts 15 through 18 charged Blankenburg with one count of gross sexual imposition, one count of corruption of a minor, and two counts of compelling prostitution against M.K., each within a specified time frame over an eight-year period. Counts 37 through 41 charged Blankenburg with five separate counts of gross sexual imposition perpetrated against B.B., each within a specified one-year time frame over a five-year period. Each count was charged as part of "an ongoing and continuing course of criminal conduct."

{¶ 136} On its face, the indictment is sufficient to charge Blankenburg with each of the nine separate offenses as provided in Counts 15 through 18 and Counts 37 through 41, respectively. I do not take issue with the lack of specificity as to the time and date of the offenses. *See State v. Wagers*, 12th Dist. No. CA2009–06–018, 2010-Ohio-2311, 2010 WL 2026779, ¶ 17–18; *State v. Sellards*, 17 Ohio St.3d 169, 171, 478 N.E.2d 781 (1985). Nor do I find that the

---

**2.** As discussed below, a premise accepted by a majority is that sex crimes can be considered either single-act crimes or continuing-course-of-conduct crimes depending on the situation presented.

**3.** Issues as to whether this statute has been superseded by Crim.R. 8(A) are not before this court, and therefore, I will not address those issues here.

counts create issues of carbon-copy indictments as discussed in *Valentine v. Konteh*, 395 F.3d 626 (6th Cir.2005); and *State v. Warren*, 168 Ohio App.3d 288, 2006-Ohio-4104, 859 N.E.2d 998 (8th Dist.). However, while both M.K. and B.B. provided sufficient evidence to establish each specific count charged, they then testified, albeit in generalized terms, that these acts occurred numerous times within the specified time frame.[4] Arguably, this creates issues regarding duplicity in the charge.

{¶ 137} The state argued that duplicity is no longer followed by courts in Ohio. I believe that *State v. Jackson*, 8th Dist. No. 95920, 2011-Ohio-5920, 2011 WL 5588708, a case distinguished by the majority, nevertheless stands for the proposition that duplicity is alive in Ohio. In fact, the cases cited by the majority, i.e., *State v. Chaney*, 3d Dist. No. 13–07–30, 2008-Ohio-3507, 2008 WL 2718509; *State v. Michael*, 5th Dist. No. 10AP090034, 2011-Ohio-2691, 2011 WL 2174984; *State v. Bruce*, 8th Dist. No. 92016, 2009-Ohio-6214, 2009 WL 4170493; and *State v. Heft*, 3rd Dist. No. 8–09–08, 2009-Ohio-5908, 2009 WL 3720562, address the problems caused by duplicity but do not discuss duplicity per se.

{¶ 138} Appellant's strongest argument concerning the problem with duplicity, and more specifically duplicity in the charge, is that it allows for many criminal acts to be alleged in a single count. This creates a risk of obtaining a nonunanimous jury verdict and begs the question as to which criminal act, if any, the jury unanimously agreed upon.

{¶ 139} The most recent case from the Ohio Supreme Court to discuss jury unanimity, although not addressing duplicity specifically, is *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995. In *Gardner*, the Ohio Supreme Court discussed a defendant's rights under the United States and Ohio Constitutions to receive a unanimous jury verdict where alternate means to commit a single count of aggravated burglary occurred. Admittedly, the court's holding in *Gardner* is not directly on point. However, the *Gardner* majority also discussed whether a unanimous jury verdict was required in multiple-act cases—a theory similar to that of duplicity in the charge. Quoting the Washington Supreme Court's decision in *State v. Kitchen*, 110 Wash.2d 403, 756 P.2d 105 (1988), the majority in *Gardner* stated:

> In multiple acts cases * * * several acts are alleged and any one of them could constitute the crime charged. In these cases, the jury must be unanimous as

---

4. This court recently held that generalized testimony demonstrating "a continuing course of conduct of repeated acts of digital penetration, fellatio, cunnilingus, oral sex, and vaginal intercourse" was sufficient to support a conviction for one count of rape and two counts of sexual battery. *See State v. Scott*, 12th Dist. No. CA2011–02–003, 2011-Ohio-6534, 2011 WL 6382540, ¶ 79. The issue of duplicity and continuing course of conduct in sex crimes was not raised or addressed by this court in that case.

to which act or incident constitutes the crime. To ensure jury unanimity in multiple acts cases, we require that either the state elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt.

*Id.* at ¶ 50.

{¶ 140} In *Kitchen,* a case involving multiple acts spread over several different locations, the Washington Supreme Court found that the state had failed to elect the particular criminal act it would rely upon for a conviction and that the trial court had failed to properly instruct the jury on unanimity. While the court found that this was error, it nevertheless determined that if there was no conflicting testimony regarding the details of the multiple acts so that the jury could not have entertained reasonable doubt as to one or more of those acts, the error would be harmless. However, because the multiple acts presented in *Kitchen* involved different locations that could have allowed some jurors to make a finding of guilt based on acts that occurred at one location while other jurors could have found guilt based on acts occurring at a different location, the Washington Supreme Court found that the jury could have entertained reasonable doubt as to which of the alleged acts actually occurred.

{¶ 141} In the case at bar, B.B. and M.K. provided specific testimony of a single sex act regarding each of the nine separate offenses charged in Counts 15 through 18 and Counts 37 through 41, respectively. B.B. and M.K. then testified that the specific sex act occurred numerous times within the charged time frame. There is no conflicting testimony regarding these specific acts but, instead, generalized testimony by each of the two victims. In turn, because the testimony provided by B.B. and M.K. regarding the multiple sex acts was generalized and vague when compared to their previous specific testimony, I find that the jury could not have entertained reasonable doubt as to which of the alleged acts actually occurred.[5]

{¶ 142} The same analysis would occur concerning double jeopardy in that the multiple acts do not have any specificity allowing for future indictments. For example, in *Heft,* a case upon which the majority relies, Heft argued that his indictment charging him with rape, sexual battery, and two counts of gross sexual imposition failed to protect him from future prosecution because it was "unascertainable from the face of the indictment whether only two acts of gross sexual imposition were alleged, or whether the State was relying on testimony about

---

5. I realize that the Washington Supreme Court's analysis in *Kitchen* differs from the analysis of the highest state courts in Maryland, Rhode Island, and New York. *See Cooksey v. State,* 359 Md. 1, 752 A.2d 606 (2000); *State v. Saluter,* 715 A.2d 1250 (R.I.1998); *People v. Keindl,* 68 N.Y.2d 410, 509 N.Y.S.2d 790, 502 N.E.2d 577 (1986).

many more acts, and merging these instances into one act during each time period." *Heft*, 2009-Ohio-5908, 2009 WL 3720562 at ¶ 51. In finding that the indictment protected Heft against double jeopardy, the Third District Court of Appeals found that the indictment "differentiated the counts by the type of offense alleged and the time period." *Id.* at ¶ 58. I find that the same can be said here, thereby alleviating any double jeopardy concerns.[6]

{¶ 143} In light of the foregoing, I base my concurring opinion to Blankenburg's first assignment of error on the rationale of *Gardner* and *Kitchen*. I realize that the discussion of multiple offenses in *Gardner* may be considered obiter dicta and not stare decisis. However, I find that the dicta presented by *Gardner*, which quotes *Kitchen*, sheds some light on how the majority of our highest court might rule on issues of duplicity. Moreover, while I find the *Gardner* discussion beyond its holding persuasive, I believe that the Maryland Supreme Court provides an excellent discussion of duplicity and the problems it creates in *Cooksey*. Therefore, I believe that *Gardner* should be revisited with the concept of duplicity in mind and in light of *Cooksey* rather than *Kitchen* so that the court can specifically address the issues regarding duplicity in order to provide the courts of this state with the necessary guidance.[7]

{¶ 144} Where I part ways with the majority, with the arguments presented by the state, and with some of the case law that they rely upon, e.g., *State v. Yaacov*, 8th Dist. No. 86674, 2006-Ohio-5321, 2006 WL 2902794; and *State v. Ambrosia*, 67 Ohio App.3d 552, 587 N.E.2d 892 (6th Dist.1990), is the premise supporting their conclusion—sex offenses can be brought as continuing-course-of-conduct crimes. This premise is contrary to the law in Ohio, detracts from the analysis of duplicity, and minimizes, if not compounds, the potentially deleterious effect of duplicity and multiple offenses within each charge.

{¶ 145} Although some courts assume otherwise without any discussion, *see Heft*, 2009-Ohio-5908, 2009 WL 3720562 at ¶ 63, sex offenses do not permit a continuing-course-of-conduct charge.[8] See Lafave, Isreal, King & Kerr, *Criminal*

---

6. A more problematic issue surrounding duplicity in this case is the fact that multiple offenses addressed in each separate count bring up the issue of prior bad acts or other acts and potential violation of Evid.R. 403 and 404(A). However, this issue was not specifically raised on appeal, and therefore, I will not address it here.

7. The Ohio Supreme Court's decision in *Gardner* has been construed as nonbinding on Ohio courts because a majority of the court did not concur with the analysis. See *State v. Ward*, 9th Dist. No. 09CA009720, 2011-Ohio-518, 2011 WL 378799, ¶ 6. This is but one more reason why the issue of duplicity and multiple offenses needs to be clarified.

8. The term "continuing course of conduct" occurs in two other areas of criminal law: (1) venue under R.C. 2901.12(H) where the crime and/or the offender is mobile, and (2) Crim.R. 8(A), to permit criteria for consolidation of separate charges. Neither use of the term is an

*Procedure* (3d Ed.2007), Section 19.3(c). Nearly every state that has addressed this issue has ruled that sex offenses by their very nature are single-act crimes requiring the legislature to amend the statutory framework to allow for prosecution under a continuing course of conduct. *See Cooksey,* 359 Md. 1, 752 A.2d 606; *Saluter,* 715 A.2d 1250; *Patch,* 135 N.H. 127, 599 A.2d 1243; *Van Hoek,* 200 Cal.App.3d 811, 246 Cal.Rptr. 352; *Keindl,* 68 N.Y.2d 410, 509 N.Y.S.2d 790, 502 N.E.2d 577. For this court to construe sex offenses as something other than single-act crimes would be to infringe upon the legislature's ability to amend and revise the law as it sees fit. *See, e.g., State v. Phillips,* 12th Dist. No. CA2009–03–001, 2010-Ohio-2711, 2010 WL 2373150 (finding that defendant could not be charged for multiple offenses under a single theft count unless facts demonstrate a course of continuing conduct as provided for by the legislature).

{¶ 146} The General Assembly has expressly provided for numerous continuing-course-of-conduct crimes. *E.g.,* R.C. 2913.61 (theft offenses), 2923.23(A) (engaging in "pattern of corrupt activity"), 2903.15(A) (permitting child abuse "for a prolonged period"), 2903.211(A) (menacing by stalking by "engaging in a pattern of conduct"), and 2919.22(B) (endangering children by parties who "repeatedly administer unwarranted disciplinary measures"). However, no such language expressly or implicitly indicates that the offenses charged in this case can be brought as continuing-course-of-conduct crimes. The General Assembly has specifically stated that no conduct constitutes a criminal offense against the state unless it is defined as an offense in the Ohio Revised Code. R.C. 2901.03(A). Therefore, as it relates to Blankenburg's first assignment of error, I concur in judgment only.[9]

## Blankenburg's Fourth Assignment of Error: Admitting 4,000 Photographs at Trial

{¶ 147} Although I believe it shows intent as opposed to motive, I agree with the majority's analysis and resolution of Blankenburg's fourth assignment of error as it relates to their decision that the photographs taken from Blankenburg's home constitute admissible other-acts evidence under Evid.R. 404(B).

---

indication that the General Assembly or the Ohio Supreme Court intends single-act crimes to be charged as a continuing course of conduct.

9. I realize that the only alternative in lieu of charging under the theory of a continuous course of conduct is to either forgo testimony of all but one of the multiple acts in each count or charge the numerous acts as separate counts. The former may deny the state's ability to seek justice, and the latter may create notice issues under cases adopting *Valentine v. Konteh,* 395 F.3d 626 (6th Cir.2005). *See State v. Rice,* 8th Dist. No. 82547, 2005-Ohio-3393, 2005 WL 1541007; *State v. Hemphill,* 8th Dist. No. 85432, 2005-Ohio-3726, 2005 WL 1706995; *State v. Warren,* 168 Ohio App.3d 288, 2006-Ohio-4104, 859 N.E.2d 998 (8th Dist.). This problem should be corrected by the legislature and not the courts.

However, because I find that the trial court abused its discretion by admitting approximately 4,000 of the so-called child-erotica photographs into evidence, I must dissent in part.

{¶ 148} Initially, I find it necessary to note that although the state removed tens of thousands of so-called child-erotica photographs from Blankenburg's home, nothing in the record indicates how many of those photographs came from the basement common area as opposed to those photographs that were removed from a bedroom containing Blankenburg's personal effects. Both Blankenburg and his brother took photographs during various local male youth sporting events over a period of several years. It is undisputed that Blankenburg shared the home not only with his brother, but also with their father. In turn, although the record contains some evidence that would allow one to infer that Blankenburg possessed a portion of the photographs taken from his home, without a more concrete record, I find that an issue remains as to how many of those photographs should be directly attributed to him.

{¶ 149} That said, while I agree with the majority's decision that the photographs taken from his home constituted otherwise admissible other-acts evidence, I find that the introduction of approximately 4,000 of these photographs depicting teenage boys spanning numerous boxes and binders went well beyond that which could be construed as merely showcasing Blankenburg's sexual motivation or intent. Instead, by admitting such an overpowering number of photographs in conjunction with the compelling testimony of Dr. Sharon Cooper, the state's expert witness on "child erotica," the trial court essentially allowed the state to introduce inadmissible character evidence indicating that Blankenburg had a propensity for young boys so pervasive that it rose to the level of a repulsive perversion. *See State v. Woodard,* 68 Ohio St.3d 70, 73, 623 N.E.2d 75 (1993), (evidence of other acts inadmissible to show criminal propensity); *State v. Buchanan,* 12th Dist. No. CA2008–04–001, 2009-Ohio-6042, 2009 WL 3808519, ¶ 57; *State v. Meador,* 12th Dist. No. CA2008–03–042, 2009-Ohio-2195, 2009 WL 1278439, ¶ 75; see also Evid.R. 404(A). When taken together, this evidence would inflame even the most passive of jurors.[10] As Weissenberger explained in his treatise on Ohio Evidence:

[Extrinsic-act evidence is excluded] not because it has no appreciable probative value, but because it has too much. The natural and inevitable tendency of the

---

10. As Dr. Cooper testified, "child erotica," such as the pictures taken from Blankenburg's home, "serves as a source of sexual fantasy," or "specific source of sexual gratification," for an individual who has a "preferential interest in children." Dr. Cooper then went through numerous photographs taken from Blankenburg's home, specifically calling the jury's attention to the children's buttocks, genitalia, and in one instance, the position of the child's "hands over his genitalia, as one might see when a person is masturbating."

tribunal—whether judge or jury—is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take proof of it as justifying a condemnation irrespective of guilt of the present charge.

Weissenberger's *Ohio Evidence Treatise* (2011), Section 404.22, at 73, quoting 1A Wigmore, Section 58.2.

{¶ 150} The state argues, and the majority seems to agree, that the trial court showed great restraint in its decision admitting only 4,000, or merely 10 percent, of the nearly 40,000 photographs taken from Blankenburg's home. In essence, the majority seems to believe that because it could have been worse, the trial court somehow did not abuse its discretion. However, Evid.R. 403(A), which makes exclusion mandatory when the probative value of relevant evidence is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury, deals with evidence that actually was introduced as opposed to that which merely could have been. I know of no case that has construed Evid.R. 403(A) based upon the percentage of what could have been introduced. To take into account what could have been, not what actually was, circumvents the clear meaning of Evid.R. 403(A) and 404(A).

{¶ 151} The majority also cites *State v. DePew*, 38 Ohio St.3d 275, 528 N.E.2d 542 (1988), for the proposition that in the absence of gruesomeness or shock value, it is difficult to imagine how the sheer number of photographs could prejudice the accused. However, the photographs admitted in *DePew* went to a central issue of the case, namely, the cause of death in a capital murder trial. In this case, the 4,000 photographs went to the otherwise extrinsic issue of Blankenburg's motive or intent that was otherwise admissible other-acts evidence under Evid.R. 404(B). The *DePew* case is therefore clearly distinguishable from the case at bar.

{¶ 152} After reviewing the record, I am not convinced that such an extraordinarily grandiose display was necessary to accurately portray Blankenburg's sexual motivation or intent. While such a question simply cannot be answered with a bright-line test, should not 100 photographs emphasizing the buttocks and groin area of teenage boys been sufficient? If not 100, then 200? Or possibly even 400? I am unwilling to trudge down such a slippery slope here. The probative value garnered from of the admission of approximately 4,000 so-called child erotica photographs depicting teenage boys in various positions and states of undress pales in comparison to the substantial danger of unfair prejudice to the accused.[11] *See State v. Ford*, 12th Dist. No. CA2009–01–039, 2009-Ohio-6046,

---

11. As to the charges of gross sexual imposition, pursuant to R.C. 2907.05(E), evidence of specific instances of a defendant's "sexual activity" is admissible in certain circumstances

2009 WL 3808374, ¶ 37 ("even if the evidence meets the prerequisites of Evid.R. 404(B), it may still be excluded under Evid.R. 403(A) if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury"). Therefore, because this error cannot simply be classified as harmless, due to the substantial danger that the admission of these photographs in conjunction with Dr. Cooper's testimony convinced the jury that Blankenburg deserved to be punished regardless of whether he actually committed the crimes charged, I find that the trial court abused its discretion by admitting all of the approximately 4,000 photographs into evidence and would sustain Blankenburg's fourth assignment of error.

{¶ 153} As I discussed in my dissent in *Sears v. State,* 12th Dist. No. CA2008–07–068, 2009-Ohio-3541, 2009 WL 2140032, alleged child-victim sex offenders make poor exemplars for the protections of the law. Nevertheless, we are required to ensure that all trials are fair and supported by the rule of law. That did not happen here. Therefore, based on the above analysis, I dissent in part from the majority's decision regarding Blankenburg's fourth assignment of error.

{¶ 154} In light of the foregoing, I concur, albeit in judgment only, with the majority's decision regarding Blankenburg's first assignment of error. I dissent in part from the majority's decision regarding Blankenburg's fourth assignment of error.

---

where "the court finds that the evidence is material to a fact at issue in the case and that *its inflammatory or prejudicial nature does not outweigh its probative value."* (Emphasis added.) If possession of so-called child erotica and its purpose as explained by the states expert can be construed as "sexual activity," then all that need be shown is that the inflammatory nature of the evidence merely "outweighs" rather than "substantially outweighs" the probative value as required by Evid.R. 403(A).