The STATE of Ohio, Appellee,

v.

PLASTER, Appellant.

[Cite as *State v. Plaster,* 164 Ohio App.3d 750, 2005-Ohio-6770.]

Court of Appeals of Ohio,
Fifth District, Richland County.

No. 05CA14.

Decided Dec. 21, 2005.

James J. Mayer, for appellee.

Paul Mancino Jr. and Jaceda Blazef, for appellant.

HOFFMAN, Judge.

{¶ 1} Defendant-appellant, Michael D. Plaster, appeals his conviction and sentence entered by the Richland County Court of Common Pleas, on one count of illegal conveyance of a prohibited item into a detention facility, in violation of R.C. 2921.36(C), following a jury trial. Plaintiff-appellee is the state of Ohio.

## STATEMENT OF THE CASE AND FACTS

{¶ 2} On May 6, 2004, the Richland County Grand Jury indicted appellant on one count of illegal conveyance of a prohibited item into a detention facility, in violation of R.C. 2921.36(C), a felony of the third degree, and one count of bribery, in violation of R.C. 2921.02(B), a felony of the third degree. The indictment set forth the date of the offenses as "on or about the 22nd day of March, 2004." Appellant filed a written "Waiver of Presence of Defendant at Arraignment" on May 27, 2004, and entered a plea of not guilty to the charges.

{¶ 3} The matter proceeded through the discovery process. After several continuances, the trial court scheduled a jury trial for February 10, 2005. Three

days before trial, the state filed a motion to amend the indictment, requesting that the indictment dates be amended from "on or about the 22nd day of March, 2004," to "between February 1, 2004 and March 31, 2004." The state asserted that the amendment did not change the name or the identity of the crimes charged, but simply enlarged the date surrounding each offense. The state provided appellant with a bill of particulars on the same day it filed its motion to amend. Appellant filed a brief in opposition to the motion to amend the indictment, asserting that the state was required to resubmit the matter to the grand jury. The trial court allowed the state to amend the indictment.

{¶ 4} At trial, Alicia Spencer testified that in February 2004, Mark Mack, an inmate at the Mansfield Correctional Institution whom Spencer visited, along with Michael Blackburn, another inmate, convinced her to smuggle drugs into the prison. After Spencer twice brought in small quantities of marijuana, Blackburn plotted a scheme in order to get larger quantities of marijuana into the prison. Blackburn arranged for Spencer to obtain marijuana from an individual by the name of Dale, and, subsequently, to give the drugs to appellant, an employee of the institution, who would bring the drugs to Blackburn.

{¶ 5} Spencer stated that on February 25, 2004, she met appellant in the parking lot of the Mansfield Restaurant. The parking lot was crowded, and appellant suggested that they drive to a nearby Dairymart. Spencer followed appellant in her vehicle. Once at the Dairymart, Spencer entered appellant's truck and gave him the marijuana. During the meeting, appellant discussed having future meetings at an abandoned food store.

{¶ 6} Blackburn telephoned Spencer later that day and advised her that he had received "the legal work," which Spencer explained was the code for marijuana. Thereafter, Blackburn arranged for Spencer to go to Elyria and obtain another ounce of marijuana from the individual she knew as Dale. Spencer left the drugs in the glove compartment of her car, and appellant was to retrieve the package during the day while she was at work. Spencer noted that the package was gone when she returned to her vehicle at the end of her shift.

{¶ 7} In mid-March 2004, Blackburn instructed Spencer to pick up a third package of marijuana and to meet the mother of another inmate at a parking garage at the Cleveland airport to pick up $700. Spencer recalled that the meeting took place on a Friday, which was either March 18 or 19, 2004. Spencer spent the weekend in Portsmouth visiting her children and returned to Mansfield on March 21, 2004. The following day, March 22, 2004, Blackburn advised Spencer that appellant would be calling her between 2:00 and 2:15 p.m. Blackburn also instructed Spencer to give appellant $50 from the $700 she had received.

{¶ 8} Shortly after Spencer concluded the conversation with Blackburn, the State Highway Patrol arrived at her apartment with a search warrant. The officers informed Spencer that they knew she was expecting a call between 2:00 and 2:15 p.m. to arrange a handoff of marijuana. Spencer gave the officers the marijuana and agreed to cooperate with them. While the officers were at her apartment, Spencer received a phone call from appellant, arranging a meeting in the Wal–Mart parking lot later that afternoon. Spencer proceeded to the State Highway Patrol post, where she was fitted with a vest and a body recording wire. The officers provided Spencer with $50 and the marijuana that she was to deliver to appellant. The police proceeded to the Wal–Mart parking lot, followed by Spencer in her own vehicle.

{¶ 9} Spencer parked her vehicle, and appellant drove up next to her. She got out of her car and approached the driver's side of appellant's truck. Appellant gave her a letter from Blackburn. As the two were talking, Spencer's cell phone rang, and she inadvertently said the signal word, resulting in the police coming in at the wrong time. Spencer had not given appellant the money or the marijuana at that point. Spencer was subsequently prosecuted for illegal conveyance of drugs into a detention facility, to which she pleaded guilty. She was placed on four years' community control.

{¶ 10} Officer David Blake, an institutional investigator at the Mansfield Correctional Institution, testified that in February 2004, he received information that two inmates, Mark Mack and Michael Blackburn, were conveying drugs into the institution with the help of a staff member. Immediately upon learning this information, Blake started listening to telephone calls on the inmate phone system. Officer Blake and his team searched the system for phone calls made from Blackburn and Mack and listened to the recorded conversations. The officer stated that it was quite obvious when they started listening to the calls that there was some type of transaction going on that involved a member of the institution staff. On or about March 22, 2004, in conjunction with the State Highway Patrol, Officer Blake and his team executed a search warrant on the residence of Alicia Spencer. Once Spencer's apartment was secure, Officer Blake and Trooper Smith spoke with Spencer, who agreed to cooperate with authorities. Officer Blake thereafter detailed the events leading up to appellant's arrest.

{¶ 11} After hearing all the evidence and deliberations, the jury found appellant guilty of one count of illegal conveyance of drugs into a detention facility. The jury was unable to reach a decision on the bribery charge. The trial court declared a mistrial on that charge and dismissed the count without prejudice. The trial court sentenced appellant to a five-year term of imprisonment.

{¶ 12} It is from this conviction and sentence that appellant appeals, raising the following assignments of error:

{¶ 13} "I. Defendant was denied due process of law when the [sic] permitted an amendment to the indictment without re-submission of the cause to [the] grand jury.

{¶ 14} "II. Defendant was denied due process of law when the prosecutor, under a ruse of amending the indictment, was allowed to circumvent the Ohio speedy trial statute.

{¶ 15} "III. Defendant was denied due process of law and his right to prepare a defense when the court denied a continuance after it allowed an amendment to the indictment.

{¶ 16} "IV. Defendant was denied a fair trial and impartial jury when the court refused to dismiss a prospective juror for cause and dismissed another juror for cause.

{¶ 17} "V. Defendant was denied due process of law and his right to present a defense when the court commented extensively concerning the fact that duress was not a defense.

{¶ 18} "VI. Defendant was denied due process of law when the court prevented defendant from presenting a defense.

{¶ 19} "VII. Defendant was denied due process of law when the court answered a jury question by giving specific information as to facts.

{¶ 20} "VIII. Defendant was denied due process of law when evidence concerning defendant's request to consult with counsel was offered.

{¶ 21} "IX. Defendant was denied due process of law when a witness was allowed to testify to the credibility of another witness.

{¶ 22} "X. Defendant was denied due process of law and a fair trial when the court gave no instruction concerning the testimony if [sic] co-conspirators.

{¶ 23} "XI. Defendant was denied due process of law when the court allowed evidence of co-conspirators' pleas of guilty without a limiting instruction.

{¶ 24} "XII. Defendant was denied due process of law when the court allowed the transcripts of recorded conversation without any limiting instructions.

{¶ 25} "XIII. Defendant was denied due process of law when his motions for judgment of acquittal were overruled.

{¶ 26} "XIV. Defendant was denied due process of law when the [sic] was sentenced to a maximum term of imprisonment for a felony of the third degree.

{¶ 27} "XV. Defendant was denied his rights under the Sixth and Fourteenth Amendments when he was sentenced based on factors not alleged in the indictment nor found by the jury.

{¶ 28} "XVI. Defendant was denied due process of law when the court did not impose any post-release control."

## I, III

{¶ 29} Because appellant's first and third assignments of error are interrelated and dispositive of this case, we shall address those assignments together. In his first assignment of error, appellant maintains that he was denied due process when the trial court permitted the state to amend the indictment without resubmitting the matter to the grand jury. In his third assignment of error, appellant contends that he was denied due process and his right to prepare a defense when the trial court denied his request for a continuance after the state was permitted to amend the indictment.

{¶ 30} Section 10, Article I of the Ohio Constitution states: "[N]o person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a grand jury." This constitutional provision "guarantees the accused that the essential facts constituting the offense for which he is tried will be found in the indictment of the grand jury. Where one of the vital elements identifying the crime is omitted from the indictment, it is defective and cannot be cured by the court as such a procedure would permit the court to convict the accused on a charge essentially different from that found by the grand jury." *State v. Headley* (1983), 6 Ohio St.3d 475, 478–479, 6 OBR 526, 453 N.E.2d 716.

{¶ 31} Crim.R. 7(D) supplements this constitutional right by specifying when a court may permit an amendment to an indictment: "The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged."

{¶ 32} Although the rule permits most amendments, it flatly prohibits amendments that change the name or identity of the crime charged. See *State v. O'Brien* (1987), 30 Ohio St.3d 122, 126, 30 OBR 436, 508 N.E.2d 144. A trial court commits reversible error when it permits an amendment that changes the name or identity of the offense charged, regardless of whether the defendant suffered prejudice. *State v. Smith*, Franklin App. No. 03AP–1157, 2004-Ohio-4786, 2004 WL 2008465, at ¶ 10. See, also, *State v. Headley*, 6 Ohio St.3d 475, 6 OBR 526, 453 N.E.2d 716. "Whether an amendment changes the name or identity of the crime charged is a matter of law." *State v. Cooper* (June 25, 1998), Ross App. No. 97CA2326, 1998 WL 340700, citing *State v. Jackson* (1992), 78 Ohio App.3d 479, 605 N.E.2d 426.

{¶ 33} The state argues that the amendment did not change the name or identity of the crime charged; therefore, the trial court's decision was proper. Appellant counters that notwithstanding the fact that the amendment did not change the name or identity of the offense, the expanding of the dates created a risk that he would be convicted on evidence that was not presented to the grand jury. In support of his position, appellant relies upon *State v. Vitale* (1994), 96 Ohio App.3d 695, 645 N.E.2d 1277.

{¶ 34} In *Vitale,* the defendant was indicted for a theft alleged to have occurred on or about June 14, 1991. At the conclusion of the state's case-in-chief, the prosecutor moved to amend the indictment to show that the theft offense was committed from "June 14, 1991 through June 21, 1991 inclusive." Id. at 700, 645 N.E.2d 1277. Over objection, at the conclusion of all the evidence, the trial court allowed the amendment. The trial court acquitted the defendant of any offense that had occurred on or about June 14, 1991, but convicted him of a theft that it found had occurred on June 21, 1991. On appeal, the Eighth District Court of Appeals found that the trial court erred in permitting the amendment, concluding, "[t]he risk then is squarely presented that defendant was convicted of an offense on evidence that was never presented to the grand jury." Id. at 700, 645 N.E.2d 1277. The *Vitale* court vacated the defendant's conviction and reversed, explaining:

{¶ 35} "The issue is not, as the state argues, and the trial court found, that defendant was not surprised or prejudiced by the belated amendment—the issue is whether he was convicted on the same evidence on which he was indicted. See *State v. Barnecut* (1988), 44 Ohio App.3d 149, 542 N.E.2d 353. In that case, the court stated:

{¶ 36} " 'Appellant's due process rights to a fair trial were violated when the trial court allowed the indictment to be amended with regard to the first two counts after the state's case-in-chief was completed. If no evidence is presented that the alleged offenses occurred within the bracketed time frames specified in the indictment, the counts in the indictment relating to those offenses should be dismissed. Any variance of proof outside the parameters of time established by the indictment may constitute a separate offense. This analysis suggests a bright-line test, *i.e.,* that an accused be tried for the crimes alleged in the indictment, and that any evidence outside the time period established in the indictment may constitute a separate offense requiring separate process * * *.' Id. at 153, 542 N.E.2d at 356–357.

{¶ 37} "Since the state, by amendment to the indictment herein, changed the identity of the crime, the trial court erred in permitting the amendment. We cannot allow a procedure which would 'permit the court to convict the accused on a charge essentially different than that found by the grand jury.' *State v.*

*Headley, supra.* See, also, *Russell v. United States* (1962), 369 U.S. 749, 770, 82 S.Ct. 1038, 1050, 8 L.Ed.2d 240, 254–255, which summarizes the point as follows:

{¶ 38} " 'To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.' " *Vitale,* 96 Ohio App.3d at 701–702, 645 N.E.2d 1277.

{¶ 39} The state submits that *Vitale* is distinguishable because appellant herein "was charged with a pattern of conduct which occurred on or about the 22nd day of March, 2004." The state adds that "thus, amendment of the indictment to include incidents between February 20, 2004 and March 22, 2004 does not change the fact that he was charged with a pattern of conduct." According to the state, the *Vitale* amendment, in contrast, added separate crimes to the indictment for which the defendant had not been charged. We disagree.

{¶ 40} The original indictment read as follows:

{¶ 41} "[O]n or about the 22nd day of March, 2004, at the County of Richland, [appellant] did knowingly deliver, or attempt to deliver, to a person who is confined in a detention facility, a drug of abuse, as defined in section 3719.011 of the Revised Code, the offender being an officer or employee of the facility or institution, in violation of section 2921.36(C) of the Ohio Revised Code, a felony of the third degree."

{¶ 42} The amended indictment reads as follows:

{¶ 43} "[B]etween February 1, 2004 and March 31, 2004, at the County of Richland, [appellant] did knowingly deliver, or attempt to deliver, to a person who is confined in a detention facility, a drug of abuse, as defined in section 3719.011 of the Ohio Revised Code, the offender being an officer or employee of the facility or institution, in violation of section 2921.36(C) of the Ohio Revised Code, a felony of the third degree."

{¶ 44} The original indictment did not allege a pattern of conduct. Accordingly, we cannot conclude that the grand jury intended to indict appellant for a continuous course of conduct. The indictment identified the date of March 22, 2004. That date corresponds to the incident in which Spencer had been fitted with a recording device but the drug/money exchange was inadvertently aborted. The indictment, as amended, effectively added two additional offenses: the February 25, 2004 drug exchange at Dairymart and the drug transfer later that day while Spencer's car was at work. Though these two instances would result in the same "name" of crime charged in the indictment (illegal conveyance of a

prohibited item into a detention facility), the fact that they are separate crimes from that charged in the original indictment changes the identity of the crime charged in the indictment. The jury thus heard evidence of three separate incidents, on any one of which it could have convicted. Because appellant could have independently been convicted on the evidence of either of these other two incidents and not on the indicted March 22 incident, we find that the trial court erred in allowing the state to amend the indictment.

{¶ 45} Appellant's first and third assignments of error are sustained.

## II, IV–XVI

{¶ 46} In light of our disposition of appellant's first and third assignments of error, we overrule appellant's remaining assignments of error as premature.

{¶ 47} The judgment of the Richland County Court of Common Pleas is reversed, and the matter is remanded for further proceedings consistent with this opinion and the law.

Judgment reversed
and cause remanded.

BOGGINS, P.J., and EDWARDS, J., concur.