[Cite as *State v. Merritt*, 2021-Ohio-2847.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Craig R. Baldwin, P.J.<br>Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| Plaintiff-Appellee | |
| -vs- | Case No. 2020 CA 0063 |
| HUNTER MERRITT | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDINGS:     Appeal from the Richland County Court of
                              Common Pleas, Case No. 2020 CR 0220


JUDGMENT:                     Affirmed in part; Reversed in part;
                              Remanded for resentencing


DATE OF JUDGMENT ENTRY:       August 18, 2021


APPEARANCES:


For Plaintiff-Appellee                For Defendant-Appellant

GARY BISHOP                           DARIN AVERY
Prosecuting Attorney                  105 Sturges Avenue
Richland County, Ohio                 Mansfield, Ohio 44903

JOSEPH C. SNYDER
Assistant Prosecuting Attorney
38 South Park Street, #2
Mansfield, Ohio 44902

*Hoffman, J.*

**{¶1}** Defendant-appellant Hunter Merritt appeals the judgment entered by the Richland County Common Pleas Court convicting him of five counts of having weapons while under disability (R.C. 2923.13(A)(2),(B)), three counts of domestic violence (R.C. 2919.25(A),(C),(D)(2)) and one count of aggravated menacing (R.C. 2903.21(A),(B)) and sentencing him to an aggregate term of incarceration of fifteen years. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}** Appellant and A.M. entered into a relationship in 2019. Appellant went to prison shortly after they began dating, but A.M. stayed with him while he was in prison. Appellant moved in with A.M. after he was released from prison in October of 2019. After they began living together, the couple fought daily. Appellant entered into a relationship with another woman, C.C. A.M. was aware Appellant was not supposed to have a firearm, but knew he had several. On December 5, 2019, she photographed Appellant with a handgun.

**{¶3}** On December 9, 2019, Appellant went to A.M.'s apartment. He believed A.M. was cheating on him with his best friend. A.M. was sleeping in her bedroom. Appellant entered the room and fired a gun into the bed, through the mattress, and into the floor. Appellant told A.M. he was going to kill her, and she had to get into his truck. He dragged A.M. to the truck, telling her they were first going to see the man who he believed A.M. was seeing. Appellant told A.M. he was then going to take her out into the country to make her dig a hole for herself so he could kill her. When Appellant pulled into a church parking lot, A.M. jumped out of the truck and ran to a nearby house. The woman inside the home called the Richland County Sheriff's office.

**{¶4}** Appellant began dating C.C. in November of 2019. He moved into C.C.'s house a few days later. The relationship was tumultuous from the beginning. According to C.C., Appellant would pistol whip her, beat her up, and shoot at her inside the house. C.C. took her kids to live with her mother while she was with Appellant. Appellant believed C.C. was cheating on him. He tracked her phone when she was not home and accused of her of doing things he did not like. C.C. received multiple black eyes, busted lips, and defensive bruises on her arms from Appellant. There were bullet holes throughout her home from Appellant shooting at her. Appellant took C.C. into the woods to dig a hole for herself. He put a gun to her head and told her he was going to kill her.

**{¶5}** During January, February, and early March of 2020, C.C.'s neighbor heard shots coming from the house. In early February, C.C. showed up at the neighbor's door with one of her children, stating Appellant had become violent and had taken her phone so she could not call for a ride. The neighbor allowed her to use his phone to call for a ride. C.C. walked to her grandfather's house, where she was picked up by her mother. C.C.'s stepfather, Mark Solon, went to C.C.'s house to lock it up, because C.C. told him Appellant was leaving the house. While Solon was in his vehicle, Appellant came out with what appeared to be a gun in the waistband of his pants.

**{¶6}** At 6:30 a.m. on March 9, 2020, a 13-year-old neighbor was walking to the bus stop. She heard yelling, and saw a man with a gun yelling at her dog, using the gun to "shoo" the dog away. Following this incident, the Richland County Sheriff's Department became aware Appellant was prohibited from possessing firearms based on his prior convictions, and obtained a search warrant. Upon searching the home on March

12, 2020, two loaded firearms were found in the bedroom under the mattress. Bullet holes were found throughout the home.

{¶7} Appellant was indicted by the Richland County Grand Jury with five counts of having a weapon under disability, four counts of domestic violence, and one count of aggravated menacing. The case proceeded to jury trial in the Richland County Common Pleas Court.

{¶8} Appellant was convicted of all counts with the exception of Count Two of domestic violence. The trial court sentenced him to three years incarceration on each count of having a weapon under disability, to be served consecutively. The trial court sentenced him to 30 days in jail for two counts of domestic violence, 180 days in jail for the remaining count of domestic violence, and 180 days in jail for aggravated menacing, to be served concurrently. It is from the September 2, 2020 judgment of the trial court Appellant prosecutes his appeal, assigning as error:

I. THE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

II. THE TRIAL COURT ERRED IN DENYING MERRITT'S R. 29 MOTION FOR ACQUITTAL WITH RESPECT TO COUNTS FIVE AND EIGHT.

III. THE TRIAL COURT ERRED BY PREVENTING THE ADMISSION OF ADMISSIBLE EVIDENCE THAT COULD HAVE UNDERMINED THE CREDIBILITY OF A WITNESS WHOSE TESTIMONY WAS NECESSARY TO ESTABLISH COUNTS 1-4.

IV. THE STATE DID NOT PRESENT SUFFICIENT EVIDENCE TO CONVICT THE DEFENDANT OF ANY CRIME, AS IT APPEARS NO WITNESS RELIABLY IDENTIFIED HIM.

V. THE TRIAL COURT ERRED BY ALLOWING THE STATE TO AMEND THE DATES OF COUNTS 1 AND 5 DURING TRIAL.

VI. THE TRIAL COURT ERRED BY FAILING TO MERGE SEVERAL OF THE COUNTS FOR SENTENCING.

I.

**{¶9}** In his first assignment of error, Appellant argues trial counsel was ineffective for failing to move to dismiss the charges for violation of his right to a speedy trial under R.C. 2945.73, failing to file a motion to suppress, and failing to move for a mistrial or a continuance of the trial when the State twice amended the dates set forth in the indictment to conform to the evidence presented at trial.

**{¶10}** A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, Appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different.  *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).  In other words, Appellant must show counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.  *Id.*

{¶11} Appellant first argues counsel was ineffective by failing to file a motion to dismiss for violation of his speedy trial rights as set forth in R.C. 2945.73.  He argues he was incarcerated from March 12, 2020, through his trial date of August 25, 2020, and the trial court failed to initially set a trial date inside of 90 days, but instead set an initial trial date of June 30.

{¶12} Am. Sub. H.B. No. 197, enacted in response to the Covid-19 pandemic, provided in pertinent part as follows:

(A) The following that are set to expire between March 9, 2020, and July 30, 2020, shall be tolled:

(3) The time within which an accused person must be brought to trial or, in the case of a felony, to a preliminary hearing and trial:

(10) Any other criminal, civil, or administrative time limitation or deadline under the Revised Code.

(B) This section applies retroactively to the date of the emergency declared by Executive Order 2020-01D, issued on March 9, 2020.

(C) Division (A) of this section expires on the date the period of emergency ends or July 30, 2020, whichever is sooner.

{¶13} The parties agree Appellant was arrested on March 12, 2020 and held in prison; therefore, the date on which he must be brought to trial pursuant to R.C. 2945.71 was June 10, 2020.  However, pursuant to House Bill 197, because the time within which Appellant must be brought to trial expired between the dates of March 9, 2020, and July

30, 2020, the time was tolled until July 30, 2020. Therefore, time did not begin to run on Appellant's speedy trial claim until July 30, 2020. Because Appellant was brought to trial on August 25, 2020, well within ninety days from July 30, 2020, there was no violation of Appellant's speedy trial rights, and we find counsel was not ineffective for failing to file a motion to dismiss.

**{¶14}** Appellant next argues counsel was ineffective for failing to file a motion to suppress evidence seized from Appellant's home pursuant to a search warrant on March 12, 2020.

**{¶15}** Trial counsel's failure to file a suppression motion does not per se constitute ineffective assistance of counsel. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000). Counsel can only be found ineffective for failing to file a motion to suppress if, based on the record, the motion would have been granted. *State v. Lavelle*, 5th Dist. No. 07 CA 130, 2008-Ohio-3119, 2008 WL 2571700, at ¶ 47*; State v. Cheatam*, 5th Dist. No. 06-CA-88, 2007-Ohio-3009, 2007 WL 1731619, at ¶ 86.

**{¶16}** Appellant concedes neither the warrant nor the affidavit used by police to secure the warrant is a part of the record before this Court on appeal. However, he argues based on *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed. 2d 685 (1969), the search of his home was unreasonable because Officer Berry could have arrested Appellant on March 9 pursuant to an arrest warrant out of another agency, rather than waiting until he executed a search warrant on March 12.

**{¶17}** The facts of *Chimel* are distinguishable from the instant case. In *Chimel*, the United States Supreme Court held a warrantless search of the defendant's entire house, incident to the defendant's proper arrest inside the house pursuant to a warrant

on a burglary charge, was unreasonable because the search extended beyond the defendant's person and the area from which he might have obtained either a weapon or something which could have been used as evidence against him. *Id.* at 768. Unlike *Chimel* which involved a warrantless search of the home, in the instant case, officers possessed a search warrant for Appellant's home. We find counsel was not ineffective for failing to file a motion to suppress because the record does not demonstrate a reasonable probability had counsel filed a motion to suppress, it would have been granted.

**{¶18}** Appellant also argues counsel was ineffective for failing to move for a continuance or a mistrial after the trial court allowed the State to amend the dates set forth in the indictment for Counts 1-5 to conform to the evidence presented at trial. Crim. R. 7(D) provides:

The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impaneled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced

by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury. Where a jury is discharged under this division, jeopardy shall not attach to the offense charged in the amended indictment, information, or complaint. No action of the court in refusing a continuance or postponement under this division is reviewable except after motion to grant a new trial therefor is refused by the trial court, and no appeal based upon such action of the court shall be sustained nor reversal had unless, from consideration of the whole proceedings, the reviewing court finds that a failure of justice resulted.

**{¶19}** The indictment for counts one through four specified a date range of "on or about December 9, 2019." After photographs of Appellant with a handgun in his possession were presented through the testimony of A.M., the prosecutor sought amendment of the dates in the indictment to include a date range of December 5, 2019, to December 9, 2019. Tr. 208. Although counsel objected to the amendment, counsel did not request a mistrial or a continuance. Counsel conceded he had received the photographs in discovery, and the photograph in question facially displayed a date of December 5, 2019; therefore, counsel was not surprised by the date. Further, we find a date of December 5 is not materially different from a date range of "on or about" December 9, and Appellant has not demonstrated had counsel requested a mistrial or a continuance, the request would have been granted.

{¶20} As to the amendment of the date range for count 5, we find Appellant's claim is moot based on our ruling the evidence was insufficient to support a conviction pursuant to Appellant's second assignment of error.

{¶21} The first assignment of error is overruled.

II.

{¶22} In his second assignment of error, Appellant argues the State did not present sufficient evidence on counts five and eight of having a weapon under disability, and the trial court therefore erred in overruling his Crim. R. 29 motions for directed verdict of acquittal.

{¶23} A Crim. R. 29(A) motion for acquittal tests the sufficiency of the evidence presented at trial. *State v. Blue*, 5th Dist. Stark No. 2001CA00250, 2002–Ohio–351, *citing State v. Williams*, 74 Ohio St.3d 569, 576, 1996–Ohio–91, 660 N.E.2d 724. Crim. R. 29(A) allows a trial court to enter a judgment of acquittal when the State's evidence is insufficient to sustain a conviction. A trial court should not sustain a Crim. R. 29 motion for acquittal unless, after viewing the evidence in a light most favorable to the state, the court finds no rational finder of fact could find the essential elements of the charge proven beyond a reasonable doubt. *State v. Franklin*, 5th Dist. Stark No. 2007–CA–00022, 2007–Ohio–4649 at ¶ 12, *citing State v. Dennis,* 79 Ohio St.3d 421, 1997–Ohio–372, 683 N.E.2d 1096.

{¶24} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶25}** In counts five and eight, Appellant was charged with having a weapon under a disability in violation of R.C. 2923.13(A)(2):

(A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

(2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.

**{¶26}** "Firearm" is defined by R.C. 2923.11(B):

(B)(1) "Firearm" means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. "Firearm" includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.

(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial

evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm.

**{¶27}** "[W]here an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable. *State v. Thompkins*, 78 Ohio St.3d 380, 384, 678 N.E.2d 541, 545 (1997).

**{¶28}** As to Count 5 of having a weapon under a disability, Mark Solon, C.C.'s stepfather, testified he went to C.C.'s home to lock up the house, believing Appellant had left the house.  Appellant came out of the house with what appeared to Solon to be a handgun in the waistband of his pants.   Solon testified he was familiar with weapons, and the handle he could see protruding from Appellant's waistband appeared to be a 1911 semi-automatic pistol, not a revolver.  When shown a picture of the handgun recovered in the search of Appellant's home, Solon testified based on the gun being in Appellant's waistband the entire time and Solon's ability to view only the grip and rear, the gun in the picture appeared to be "very similar."  Tr. 370.  However, Solon was unable to affirmatively testify the gun in the picture and the gun recovered from under Appellant's mattress were the same gun due to his inability to see the entire gun.  The evidence reflected Appellant kept the gun in the waistband of his pants during the entire encounter, and did not brandish or implicitly threaten to discharge the weapon during the incident.  We therefore find the State failed to present sufficient evidence of operability to demonstrate the handle observed by Solon was a firearm as defined by R.C. 2923.11(B),

and the trial court therefore erred in failing to grant Appellant's motion for a directed verdict of acquittal as to count five of having a weapon under a disability.

{¶29} Count eight of having a weapon under disability arose from the incident on March 9, 2020, in which the neighbor girl, W.W., saw a man yelling and waving a gun at her dog at 6:30 a.m. as she went to the bus stop to travel to school.

{¶30} Appellant first argues the evidence does not support a finding the weapon observed by W.W. was an operable firearm as defined by R.C. 2923.11. W.W. testified the man was pointing the gun at the ground, waving it up and down like he was trying to move the dog away. The man was yelling at the dog. She testified, "He wasn't being like violent, but he wasn't being nice." Tr. 255. The yelling combined with the way the man held the gun caused her concern. She testified she was able to see the front or top part of the gun. She testified her dad has paint ball guns, and they are bigger than the gun she the man in front of Appellant's house holding. She testified the gun the man was holding was pistol-sized. Viewed in a light most favorable to the State, we find W.W.'s testimony about the appearance of the gun and the manner in which the man was yelling and waving the gun around sufficient evidence from which a rational trier of fact could find beyond a reasonable doubt the gun was a "firearm" as defined by R.C. 2923.11.

{¶31} Appellant also argues W.W. failed to identify him as the man who waved the gun at her dog. W.W. was unable to identify Appellant, or any suspect, from a photo lineup. She was also unable to identify Appellant at trial. The incident occurred around 6:30 a.m. on March 9, 2020, when it was not yet light outside, and she was unable to clearly see the man's face. The State presented evidence Appellant resided at the home identified by W.W. with his girlfriend, C.C. C.C. testified Appellant had a pistol when he

moved in with her, which he carried "[e]veryday, all day long." Tr. 277. C.C. testified he carried the pistol everywhere, and never went anywhere without it. Although W.W. was unable to clearly view the man's face, she provided a general description of the man to police as tall, not skinny but not fat, with a beard, and wearing a black hoodie. Sgt. James Berry of the Richland County Sherriff's Department went to Appellant's home on March 9, after receiving the report of the incident with W.W. Appellant had a beard at that time, met the general description given by W.W., and had a black or "extremely dark navy blue" sweatshirt over his shoulder. Tr. 591. Viewed in a light most favorable to the State, we find the evidence sufficient from which a rational trier of fact could find Appellant's identity proven beyond a reasonable doubt.

{¶32} The second assignment of error is overruled as to count eight and sustained as to count five.

III.

{¶33} In his third assignment of error, Appellant argues the court erred in sustaining the State's objections to his questioning of Sgt. Berry and A.M. regarding A.M.'s statements recorded in Sgt. Berry's police report.

{¶34} "A trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). An abuse of discretion is more than a mere error in judgment; it is a "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.,* 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993).

**{¶35}** While cross-examining A.M., counsel for Appellant began reading to her from Sgt. Berry's report.   After the State objected, counsel for Appellant represented at sidebar A.M. previously made a statement to Sgt. Berry which was inconsistent with her trial testimony.  The trial court sustained the objection, and informed counsel the manner in which to proceed if he wanted to use A.M.'s  prior statement to impeach A.M.'s trial testimony.  Counsel responded, "That will work," and, "So I will go ahead and ask her for her response then."  Tr. 198.  However, when questioning resumed, Appellant made no attempt to impeach A.M. with her prior statement to Sgt. Berry.

**{¶36}** During cross-examination of Sgt. Berry, counsel for Appellant began questioning the officer about statements he recounted in his police report made by A.M. and by the woman whose house she ran to after escaping Appellant's truck.   The State objected.   The trial court sustained the objection, noting the report contained nested hearsay, or "hearsay within hearsay."  Tr. 626.

**{¶37}** Appellant argues the police report was admissible as an exception to the hearsay rule pursuant to Evid. R. 803(8):

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> (8) Public Records and Reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers

and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness.

**{¶38}** However, Appellant was attempting to introduce hearsay statements nested within the document.  Evid. R. 805 provides, "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules."  Appellant does not argue the hearsay statements included within the report are admissible under any other exception to the hearsay rule.  We therefore find the trial court did not abuse its discretion in excluding the statements within the police report as hearsay.  Further, the police report is not a part of the record before this Court on appeal, and we therefore cannot find Appellant was prejudiced by its exclusion.

**{¶39}** The third assignment of error is overruled.

IV.

**{¶40}** In his fourth assignment of error, Appellant argues the record demonstrates Appellant was wearing a face mask in the courtroom, and every witness identification of Appellant is therefore "suspect."

**{¶41}** Nothing in the record demonstrates Appellant's mask affected the in-court identifications by witnesses.  A.M. and C.C. both were romantically involved with Appellant, and lived with Appellant and thus were very familiar with his appearance. C.C.'s mother and stepfather interacted with Appellant on multiple occasions, as did the police officers who identified Appellant at trial.  Appellant's argument their identifications

were unreliable because he was wearing a face mask to comply with the trial court's Covid-19 safety procedures is speculative. We find the record does not demonstrate the in-court identifications by the witnesses in the instant case were rendered unreliable by Appellant's use of a face mask.

{¶42} In addition, Appellant removed his face mask to testify. Tr. 659. This allowed the jury to clearly see his face and identify him through the body-camera video which earlier had been played during the testimony of Sgt. Berry.

{¶43} The fourth assignment of error is overruled.

V.

{¶44} In his fifth assignment of error, Appellant argues the trial court erred in allowing the State to amend the indictment to conform to the evidence presented at trial with regard to Counts 1 through 4, and later as to Count 5.

{¶45} We find Appellant's argument as to Count 5 is rendered moot by our ruling in assignment of error two the conviction on count five was supported by insufficient evidence.

{¶46} Crim. R. 7(D) provides:

The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the

indictment, information, or complaint and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impaneled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury. Where a jury is discharged under this division, jeopardy shall not attach to the offense charged in the amended indictment, information, or complaint. No action of the court in refusing a continuance or postponement under this division is reviewable except after motion to grant a new trial therefor is refused by the trial court, and no appeal based upon such action of the court shall be sustained nor reversal had unless, from consideration of the whole proceedings, the reviewing court finds that a failure of justice resulted.

{¶47} Although the rule permits most amendments, it flatly prohibits amendments which change the name or identity of the crime charged. *See State v. O'Brien*, 30 Ohio St.3d 122, 126, 30 OBR 436, 508 N.E.2d 144 (1987). A trial court commits reversible error when it permits an amendment which changes the name or identity of the offense charged, regardless of whether the defendant suffered prejudice. *State v. Smith*, Franklin App. No. 03AP–1157, 2004-Ohio-4786, 2004 WL 2008465, at ¶ 10. *See, also, State v. Headley*, 6 Ohio St.3d 475, 6 OBR 526, 453 N.E.2d 716. "Whether an amendment changes the name or identity of the crime charged is a matter of law." *State v. Cooper*,

4th Dist. Ross App. No. 97CA2326, 1998 WL 340700 (June 25, 1998), *citing State v. Jackson*, 78 Ohio App.3d 479, 605 N.E.2d 426 (1992).

**{¶48}** The indictment for counts one through four specified a date range of "on or about December 9, 2019." After a photograph of Appellant with a handgun in his possession was presented through the testimony of A.M., the prosecutor sought amendment of the dates in the indictment to include a date range of December 5, 2019, to December 9, 2019. Tr. 208. The photograph facially reflected a date of December 5, 2019.

**{¶49}** Appellant relies on this Court's decision in *State v. Plaster*, 164 Ohio App. 3d 750, 2005-Ohio-6770, 843 N.E.2d 1261 to support his argument the amendment in the instant case potentially resulted in his conviction of crimes not presented to the grand jury, thus changing the name or identity of the offense charged. In *Plaster,* the trial court granted an amendment to Plaster's indictment, which originally charged the date of the offense as "on or about the 22nd day of March, 2004," to include incidents occurring between February 20, 2004 and March 22, 2004. Although the grand jury in *Plaster* did not indict the defendant for a continuing course of conduct, as a result of the amendment, was Appellant was convicted of a continuous course of conduct which included two separate incidents not presented to the grand jury. Because Plaster could have independently been convicted on the evidence of either of these other two incidents and not for the March 22 incident for which he was indicted, this Court found the trial court erred in allowing the state to amend the indictment. *Id.* at ¶44.

**{¶50}** In the instant case, the amendment changed the date range from "on or about December 9, 2019" to "on or about December 5th through December 9th, 2019." Tr.

211. The amendment was based on the existence of a date on a picture of Appellant with a handgun, which was dated December 5, 2019. The charges in counts one through four all surrounded the incident which occurred with A.M., in which Appellant shot through her bed into the floor, forced her into his truck, and told her he was going to kill her and make her dig the hole in which to bury her. From these events, Appellant was acquitted of one charge of domestic violence, but was convicted of domestic violence, aggravated menacing and having a weapon under disability. Unlike *Plaster*, the record does not demonstrate Appellant was potentially convicted of separate incidents which were not presented to the grand jury, nor does the amendment in the instant case change the offense to a continuous course of conduct. The picture bearing the date of December 5, 2019 was provided to defense counsel in discovery. We find the trial court did not err in allowing the State to amend the indictment to conform to the victim's testimony and the picture admitted into evidence in the instant case, as the record does not demonstrate the amendment changed the nature or identity of the offense, nor does the record demonstrate Appellant was potentially convicted on separate charges from those presented to the grand jury.

**{¶51}** The fifth assignment of error is overruled.

VI.

**{¶52}** Appellant argues all counts of having a weapon under a disability should merge for sentencing because he engaged in a single course of conduct in possessing the guns during a time frame from December 5, 2019, through March 12, 2020. He argues the acts were not committed separately, but only detected by various witnesses on separate dates, and all acts were committed with the same animus.

{¶53} Count one involved the gun possessed by Appellant in the picture taken by A.M. on December 5, 2019, and fired through her bed into the floor on December 9, 2019. Count five has been vacated by this Court pursuant to Appellant's second assignment of error, and any argument regarding merger is therefore rendered moot. Count eight involved Appellant's brandishing the gun to scare away W.W.'s dog on March 9, 2020. Counts nine and ten relate to the handgun and the shotgun recovered from under a mattress during the search of Appellant's home on March 12, 2020.

{¶54} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.2d 892, ¶25, the Ohio Supreme Court held when considering whether there are allied offenses which merge into a single conviction under R.C. 2941.25(A), both the trial court and the reviewing court on appeal must first take into account the conduct of the defendant. In other words, how were the offenses committed? *Id.* If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation. *Id.* When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. *Id.* at ¶26.

{¶55} Counts one and eight involved different victims from each other and from the counts arising from the discovery of the weapons under the mattress. Therefore, the harm for A.M. and for W.W. is separate and distinct, and Appellant can be convicted of multiple counts.

**{¶56}**  Appellant argued at sentencing counts nine and ten should merge because the shotgun and the handgun were found in the same location.  Although the weapons were located in the same place, the record demonstrates the weapons were acquired and possessed with separate animus or motivation.  C.C. testified Appellant brought the pistol with him when he moved into her home, and carried it everywhere with him.  She testified he bought the shotgun for her protection, and left it at home with her.  Tr. 277.  We therefore find the offenses were committed separately and with separate motivation in the instant case, although the evidence of each was discovered at the same time.  The trial court did not err in failing to merge the offenses.

**{¶57}**  The sixth assignment of error is overruled.

**{¶58}**  Appellant's conviction and sentence on count five of having a weapon under disability is reversed, and pursuant to App. R. 12(B) we hereby enter final judgment of acquittal on that charge.  All other convictions are affirmed.  The matter is remanded to the trial court for resentencing consistent with our reversal of Count Five.

By: Hoffman, J.
Baldwin, P.J.  and
Wise, John, J. concur